GREGORY E. SPRATT v. DUKE POWER COMPANY

No. 8210IC1000

(Filed 20 December 1983)

**Master and Servant § 60.3— workers' compensation—injury while seeking chewing gum—breach of rule against running—entitlement to compensation**

 Injuries suffered by plaintiff when he slipped on accumulated coal dust on the floor of defendant power company's plant while running back to the plant canteen after a meal break to get a pack of chewing gum arose out of and in the course of his employment, notwithstanding plaintiff knew that the employer's rules prohibited running inside the plant, since the trip to the canteen was undertaken for the personal comfort of the plaintiff; running was not so abnormally dangerous, unconventional or unusual a manner of proceeding to the canteen for chewing gum as to take plaintiff's conduct outside the course and scope of his employment; and plaintiff's disobedience of the rule against running was not sufficient to break the causal connection between the injury

and the employment, especially in view of the fact that plaintiff was not violating an immediate and direct order of a then present superior. G.S. 97-2(6).

APPEAL by defendant from an order of the North Carolina Industrial Commission entered 29 July 1982. Heard in the Court of Appeals 24 August 1983.

Defendant, Duke Power Company, appeals from the award of Workers' Compensation benefits by the Full Commission for injuries plaintiff Spratt suffered when he slipped on accumulated coal dust on the floor of defendant's power plant while running back to the plant canteen after a meal break to get a pack of chewing gum.

*W. Edward Poe, Jr., Assistant General Counsel, Duke Power Company, for defendant appellant.*

*Davis & Corriher, by James A. Corriher, for plaintiff appellee.*

JOHNSON, Judge.

The question presented for review is whether the Industrial Commission correctly found and concluded that Gregory Spratt's injury by accident arose out of and in the course of his employment. For the reasons set forth below, we answer the question in the affirmative.

The only injury which is compensable under the Workers' Compensation Act is an injury "by accident arising out of and in the course of the employment." G.S. 97-2(6). The determination of whether an accident arises out of and in the course of employment is a mixed question of law and fact, and the appellate court may review the record to determine if the findings and conclusions of the Industrial Commission are supported by sufficient evidence. G.S. 97-86; *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 233 S.E. 2d 529 (1977).

The uncontradicted evidence tended to show that the 25 year old plaintiff, Gregory Spratt, had been employed for approximately four years as a set (or utility) operator by and at defendant Duke Power Company's Buck Steam (power) Station. Plaintiff worked during the third shift, from 11:00 p.m. to 7:00 a.m. On 18

April 1981, plaintiff reported to work at about 11:00 p.m. When he arrived, the other employees were in the process of shutting the unit down. Plaintiff performed various duties until 1:30 a.m., including changing a chart on the precipitator panel in the control room, locking up the precipitators, dumping ashes out of the boilers and cooling the boilers down. Plaintiff's trip to the control room in the main area of the plant took him across the same area where he later fell. The floor was a terrazzo material, but at the precipitator panel the floor changed to a grating. The grating extends back toward the rear of the station where the canteen is located.

At about 1:30 a.m. on 19 April 1981, plaintiff met some co-workers and went to the canteen, also referred to as the "bellywasher," for dinner. After finishing dinner, plaintiff returned to work and went first to the control room, then to get a drink from the lobby water fountain, and then he decided to go back to the canteen to purchase some chewing gum. He went through the double doors separating the lobby area from the main area of the plant, and started running across the terrazzo floor toward the canteen on a path that took him by the precipitator panel. As he ran, plaintiff slipped on coal dust that had accumulated, probably resulting from a coal leak, on the floor. He started falling and struck and injured his left knee and left hand on the floor grating.

Plaintiff knew that station rules prohibited running inside the plant. He offered no reason to explain why he was running on this occasion. Plaintiff admitted on cross-examination that he used to run track in high school, and that he ran on this particular occasion out of "force of habit." Plaintiff's shift supervisor, O. R. Edwards, testified that although he was not present at the time of plaintiff's accident, he had previously warned all the employees, including plaintiff, not to run on numerous occasions and that he had in the past seen plaintiff running and stopped him.

On these facts, Deputy Commissioner Shuping issued an opinion and award dated 9 March 1982, in which he ruled that Mr. Spratt's accident did not arise out of and in the course of his employment because his running was in violation of his employer's safety rule. The Deputy Commissioner made a Finding of Fact [No. 1] reflecting the foregoing evidence and, in addition, the following pertinent Finding of Fact:

2. Despite the defendant-employer having previously adopted a safety rule (and/or regulation) which specifically forbade running, under any circumstances, within the business premises and of which he was not only aware but for prior violation(s) of which he, as well as other co-employees, had been reprimanded by the defendant-employer; claimant for reasons personal to himself and which borne [sic] no reasonable relationship, either directly or indirectly, to the furtherance of his master's business, elected to run to the canteen on this occasion, despite the fact that he was likewise aware, as a result of having walked through this same area earlier during the shift, of the presence of accumulated coal dust on the terrazzo flooring thereof. Therefore, in light of the foregoing, the method, and more particularly, the running fashion, by which he attempted to satisfy his personal comfort needs on this occasion, was unreasonable.

Based upon his Findings of Fact, the Deputy Commissioner concluded, as a matter of law, as follows:

On 19 April 1981 plaintiff sustained an injury by accident; however, the same did not arise out of and in the course of his employment, in that the activity in which he was then engaged and which resulted in such injury; to wit, running within the defendant-employer's premises, had been specifically forbidden by his employer and (such activity) was not calculated, either directly or indirectly, to further his master's business, but rather was adopted by the claimant solely for the purpose of satisfying his own personal comfort or convenience and was, in consideration of the known hazards, an unreasonable manner (or method) of doing so. G.S. 97-2(6); Larson, Workers' [sic] Compensation Law, Section 21.80 *et seq.*, Section 31.12; *Teague v. Atlantic Co.*, 213 N.C. 546, 196 S.E. 875 (1938); *Martin v. Bonclarken Assembly*, 296 N.C. 540, 251 S.E. 2d 403 (1979).

On 29 July 1982, the Full Commission issued an opinion and award reversing the Deputy Commissioner's decision, stating that,

The Full Commission has carefully considered the record in its entirety, particularly in light of the decision of the Supreme Court filed July 13, 1982 in the case of *Hoyle v.*

*Brick & Tile Company.* The Full Commission is of the opinion that the decision of the Hearing Commissioner cannot be affirmed.

The Full Commission then adopted the Deputy Commissioner's Findings of Fact Nos. 1 and 2, vacated and set aside the balance of the decision, and inserted in lieu thereof the following:

### FINDING OF FACT

3. At the time complained of, plaintiff was not violating a direct, immediate, and specific order by a then present superior. His accident, therefore, arose out of and in the course of his employment.

Based upon the foregoing Findings of Fact, the Full Commission made the following Conclusion of Law:

The Supreme Court, in the case of *Hoyle v. Isenhour Brick & Tile Company, supra,* held to bar recovery it must be shown that an employee is "disobeying a direct, immediate, and specific order by a then present superior." We cannot find that this is true in the case *sub judice.* We therefore hold that the accident arose out of and in the course of the employment.

The defendant contends that the Full Commission erred in reversing the Deputy Commissioner on the basis of the Supreme Court's decision in *Hoyle v. Isenhour Brick & Tile Co.*, 306 N.C. 248, 293 S.E. 2d 196 (1982). Although we agree with defendant that *Hoyle* presents a slightly different factual situation than that presented by plaintiff Spratt's claim, we are, nevertheless, of the opinion that the Full Commission reached the correct conclusion in awarding plaintiff benefits for his accidental injury.

In *Hoyle* the deceased employee was employed as a cull brick stacker. He removed imperfect bricks from a conveyor and stacked them. A forklift operator then removed the culls. The employer had a rule against unauthorized personnel operating forklifts and Hoyle was not so authorized. On two occasions prior to the accident, Hoyle was observed by supervisors using a forklift and reprimanded.

On the night of the accident, Hoyle had stacked culls until he had no more space to put them. The authorized forklift operator,

who was busy helping another employee, told Hoyle that he could use the forklift to move the culls. After loading the stack of cull bricks, Hoyle moved away from his work station in the forklift. He was later found pinned under the overturned forklift. The Deputy Commissioner's denial of benefits was upheld by the Full Commission.

On appeal, this Court in a 2-1 decision[1] held that Hoyle's operation of the forklift, after prior warnings and in the face of rules against the practice, constituted a departure from the job for which he had been employed, and affirmed the award denying benefits. Judge (now Justice) Harry C. Martin dissented on the grounds that at the time of the accident, Hoyle was attempting to get his own work done, although in a forbidden fashion, and therefore his actions did not break the causal connection between his employment and his death.

The Supreme Court in a 4-3 decision followed Judge Martin's reasoning and reversed this Court's decision. Writing for the majority, Chief Justice Branch first stated the general rules governing compensable injuries resulting from accidents "arising out of and in the course of the employment."

> The term "arising out of" refers to the origin or cause of the accident, and the term "in the course of" refers to the time, place, and circumstances of the accident . . .

306 N.C. at 251, 293 S.E. 2d at 198.

In reaching its ultimate conclusion that Hoyle's disobedience of his employer's rule was not such a departure from his employment as to destroy the causal connection between the accident and the employment, the Supreme Court analyzed a number of its prior opinions in similar cases of employee disobedience. The court distinguished *Teague v. Atlantic Co.*, 213 N.C. 546, 196 S.E. 875 (1938) (benefits denied where deceased had disobeyed his orders and exceeded the scope of his employment by act of hazardous thrill seeking bearing no conceivable relation to accomplishment of job), *Morrow v. Highway Commission*, 214 N.C. 835, 199 S.E. 265 (1938) (bridge painter's disobedience of a direct

---

1. *Hoyle v. Isenhour Brick and Tile Co.*, 55 N.C. App. 675, 286 S.E. 2d 830 (1982).

and specific order by a then present superior not to jump into the river to retrieve a fallen paintbrush breaks the causal relation between the employment and the resulting injury) and *Taylor v. Dixon*, 251 N.C. 304, 111 S.E. 2d 181 (1959) (Industrial Commission erred by failing to make findings of fact with respect to employer's defense that employee, who was hired to operate a chain saw and was injured while operating a tractor in defiance of a direct order, had not merely deviated from the specified *method* of working but had substantially departed from the *ultimate work* for which he was employed). These cases were considered representative of the older view that acts outside the employee's job description are outside the scope of employment, particularly in the face of a superior's direct and immediate order not to engage in the prohibited activity. In *Teague* and *Taylor* the *activity* engaged in was considered to be outside the scope of employment. In *Morrow*, the *manner* or *method* of going about the assigned task was considered so abnormally dangerous and unreasonable as to break the causal connection. Thus, in the three cases the injury could not be considered as arising out of the scope of the employment.

In contrast to that older line of cases, the *Hoyle* majority relied upon, "the more recent cases [which] have not viewed minor deviations from the confines of a narrow job description as an absolute bar to the recovery of benefits, even when such acts were contrary to stated rules or to specific instructions of the employer where such acts were reasonably related to the accomplishment of the task for which the employee was hired." 306 N.C. at 254, 293 S.E. 2d at 200. Of these cases, two involved specifically prohibited job activities. *Riddick v. Cedar Works*, 227 N.C. 647, 43 S.E. 2d 850 (1947) (lumber stacker warned to stay away from saws in employer's lumber plant compensated for injuries sustained when he attempted to help co-employee saw a board) and *Parsons v. Swift & Co.*, 234 N.C. 580, 68 S.E. 2d 296 (1951) (wheelbarrow hauler who was prohibited by company rule from operating a tractor, entitled to death benefits when he was killed in attempting to move a tractor blocking his path). The four other cases involved specifically prohibited methods of accomplishing the employee's assigned work duties. *Hartley v. Prison Dept.*, 258 N.C. 287, 128 S.E. 2d 598 (1962) (prison guard compensated for injuries sustained when he, contrary to prison

rules, climbed the fence rather than walk around through the gate to relieve another guard in a nearby tower); *Hensley v. Carswell Action Committee*, 296 N.C. 527, 251 S.E. 2d 399 (1979) (deceased youth hired to cut weeds around a lake compensated for accidental drowning occurring when he, contrary to instructions, attempted to wade across the lake to cut weeds he had missed); *Archie v. Lumber Co.*, 222 N.C. 477, 23 S.E. 2d 834 (1943) (deceased logger entitled to compensation for mortal injuries sustained when he, contrary to company rules, attempted to board a log car to ride from the work site along the company's railroad line back to camp); *Howell v. Fuel Co.*, 226 N.C. 730, 40 S.E. 2d 197 (1946) (deceased coal car sweeper who was injured when he stood on unprotected portion of railway platform waiting for a car to be moved entitled to compensation despite instruction to stand only in a specified place of safety).

The court then cited *Guest v. Iron & Metal Co.*, 241 N.C. 448, 452, 85 S.E. 2d 596, 600 (1955), for the following proposition:

Basically, whether plaintiff's claim is compensable turns upon whether the employee acts for the benefit of his employer *to any appreciable extent* or whether the employee acts solely for his own benefit or that of a third person. (Emphasis added.)

The legal principles gleaned from the foregoing cases were summarized as follows:

[W]e find that thrill seeking which bears no conceivable relation to accomplishing the job for which the employee was hired moves the employee from the scope of his employment . . . Likewise, disobedience of a direct and specific order by a then present superior breaks the causal relation between the employment and the resulting injury . . . This is patently so; the employee's subjective belief concerning the advisability of his course of action becomes irrelevant since there would be no room for doubt as how best to serve his employer's interest in the face of the employer's direct and immediate order. Conversely, when there is a rule or a prior order and the employee is faced with a choice of remaining idle in compliance with the rule or order or continuing to further his employer's business, no superior being present, the employer who would reap the benefits of the employee's acts if suc-

cessfully completed should bear the burden of injury resulting from such acts. Under such circumstances, engaging in an activity which is outside the narrow confines of the employee's job description, but which is reasonably related to the accomplishment of the task for which the employee was hired, does not ordinarily constitute a departure from the scope of employment.

306 N.C. at 259, 293 S.E. 2d at 202-203. Applying these general rules to the facts before it, the *Hoyle* court concluded:

[T]he evidence shows that [the] employee was faced with the choice of abandoning the furtherance of his employer's business or acting in contravention of a previous order. There was no superior present to forbid or permit his operation of the forklift. We are therefore of the opinion that employee's election to disobey a prior given order did not break the causal connection between his employment and his fatal injury if the disobedient act was reasonably related to the accomplishment of the task for which he was hired.

Thus, the majority concluded that benefits should be awarded under the Act where the injured employee was acting in furtherance of his employer's business to any appreciable extent, albeit in disobedience of the employer's established rules or order, and the injury did not arise while the employee was either thrill seeking or disobeying a direct order, by a then present superior, not to undertake an unreasonably dangerous or wholly unrelated job activity. The former activity was considered entirely outside the course and scope of employment, while the latter activities were considered to be such substantial deviations as to break the causal connection between the injury and the employment so that the accident could not be said to have arisen out of the scope of the employment. Therefore, the doctrine announced in *Hoyle*, that mere disobedience of a *standing* rule or order of the employer does not automatically bar compensation, may be seen to apply to both prohibited unrelated job activities and prohibited methods of accomplishing assigned work duties in those cases where it nevertheless may be said that the employee has sustained a work-related injury by accident. In other words, if compensation would otherwise be warranted under general principles of law relating to industrial accidents, it will not be defeated by violation of prior safety rules of the employer.

Defendant argues that in reversing the Deputy Commissioner's award denying benefits in this case, the Full Commission erred by relying solely on that portion of the *Hoyle* opinion dealing with the absence of a then present superior whose direct, immediate and specific order the injured employee violated. Defendant argues that an employer cannot reasonably be expected to have a supervisor present at all times, and that even had he done so, "the foreman certainly could not have anticipated that Spratt would suddenly sprint across the terrazzo floor toward the rear of the plant to purchase a pack of gum and warn him not to do so. Thus, it is easily seen that reliance on the 'violation of an order by a then present supervisor' argument is an absurd reason for awarding benefits on the facts of this case." Defendant argues further that a close and fair reading of *Hoyle* reveals that benefits under the Act were awarded primarily because Hoyle was engaged in doing his master's work at the time he was killed—not because Hoyle's supervisor was not present on the scene at the time to forbid or permit operation of the forklift. It is defendant's contention that *Hoyle* is distinguishable because plaintiff was not engaged in his duties as a utility operator at the time of his accident, but was undertaking a purely personal errand in an unsafe and prohibited manner and, therefore, that compensation should be denied notwithstanding the fact that plaintiff was not disobeying a direct, immediate and specific order by a then present superior.

We agree with defendant that the narrow aspect of *Hoyle* relied upon by the Full Commission, and excepted to by the defendant, is not dispositive of the case *sub judice*. However, we find defendant's reading of *Hoyle* to be too restrictive. Although the court was evidently unwilling to overrule the earlier cases of, for example, *Teague v. Atlantic Co., supra* and *Morrow v. Highway Commission, supra*, the broad principle repeatedly stressed throughout the *Hoyle* opinion is that the employee's violation of a safety rule does not *of itself* constitute a bar to recovery of compensation where it may be determined that his injury arose in the course of the employment. *Hartley v. Prison Dept., supra* was cited for the proposition that, " 'not even gross negligence is a defense to a compensation claim.' *Id.* at 289, 128 S.E. 2d at 600 . . . 'Only intoxication or injury intentionally inflicted will defeat a claim,' *id.*, and . . . even the willful violation

of an employer's rule does not defeat compensation, but may result in a ten percent reduction *if* the rule has been approved by the Industrial Commission. G.S. 97-12." 306 N.C. at 256, 293 S.E. 2d at 201. The *Hoyle* court also stated that, "the purpose of the Workers' Compensation Act was 'to eliminate the fault of the workman as a basis for denying recovery.'" *Id., quoting Hartley v. Prison Dept., supra* at 290, 128 S.E. 2d at 600.

Similarly, the court characterized the decision in *Archie v. Lumber Co., supra* as providing "*the definitive answer* to the question of whether prior orders or rules of the employer may constitute an absolute bar to the recovery of compensation." (Emphasis added.) 306 N.C. at 257, 293 S.E. 2d at 201. In *Archie*, the claimant was not denied compensation "because he made an error of judgment and attempted to use a more hazardous means of transportation [the log train as opposed to an enclosed car], likewise under the control of the defendant, nor because in so doing he violated a rule which was not always observed by the employees." 222 N.C. at 481, 23 S.E. 2d at 836. Rather, the court stated that the *only provision* made by the Act with regard to an injury caused by, *inter alia*, the willful breach of a rule or regulation adopted by the employer and approved by the Industrial Commission, is to require that his compensation be reduced by ten percent. *Id.* The court also expressly disapproved cases from other jurisdictions holding to the contrary as not in accord with the "proper interpretation" of the North Carolina Workers' Compensation Act.

The *Hoyle* court summarized the rule concerning the violation of employer safety rules as follows:

It is neither the role of the Industrial Commission nor of this Court to enforce the employer's rules or orders by the denial of Workers' Compensation. Enforcement of rules and orders is the responsibility of the employer, who may choose to terminate employment or otherwise discipline disobedient employees. This Court will not do indirectly what the employer failed to do directly.

306 N.C. at 260, 293 S.E. 2d at 203.

Thus, the *Hoyle* court's reasoning indicates that compensation for an injury by accident arising out of and in the course of

employment is not to be denied simply because the employee violated a safety regulation or rule. Had plaintiff Spratt slipped on coal dust while running to control a coal flow, compensation would be properly awardable under *Hoyle.* The question then becomes, is it to be denied merely because plaintiff so slipped when he impulsively ran back to the canteen for a package of chewing gum? We answer the question in the negative.

The phrase "in the course of employment" refers to the time, place and circumstances of the accident. *Clark v. Burton Lines,* 272 N.C. 433, 158 S.E. 2d 569 (1968). With respect to time, the course of employment includes the work period and any intervals during the period for rest and refreshment. *Rewis v. Insurance Co.,* 226 N.C. 325, 38 S.E. 2d 97 (1946). With respect to place, the course of employment includes the premises of the employer. *Harless v. Flynn,* 1 N.C. App. 448, 162 S.E. 2d 47 (1968).

Plaintiff's accident occurred on the defendant employer's premises during plaintiff's scheduled work period. The fact that plaintiff was taking a break for a drink of water and some refreshment would not take the accident out of the course of employment since such intervals are included under *Rewis v. Insurance Co., supra. See also Williams v. Hydro Print, Inc.,* 65 N.C. App. 1, --- S.E. 2d --- (1983) (injury by accident occurring during regular rest break when employee started running in the plant backyard and tripped over the railroad track running through it arises out of and in the course of employment).

With respect to circumstances, injuries sustained while an employee is engaged in an activity which is calculated to further, *directly* or *indirectly,* the employer's business is within the course of employment. *Perry v. American Bakeries Co.,* 262 N.C. 272, 136 S.E. 2d 643 (1964). The fact that the employee is not engaged in the actual performance of the duties of the job does not preclude an accident from being one within the course of employment. *Brown v. Aluminum Co.,* 224 N.C. 766, 32 S.E. 2d 320 (1944) (accident occurring when a watchman returning to the washroom for his flashlight was pushed aside by fellow employee in a hurry arose in the course of employment).

Activities which are undertaken for the personal comfort of the employee are considered part of the "circumstances" element

of the course of employment. The doctrine is clearly stated in *Rewis v. Insurance Co., supra*, at 328, 38 S.E. 2d at 99, as follows:

> An employee, while about his employer's business, may do those things which are necessary to his own health and comfort, even though personal to himself, and such acts are regarded as incidental to the employment . . . "Such acts are as necessary to the life, comfort and convenience of the workman while at work, though personal to himself, and not technically acts of service, are incidental to the service; and an accident occurring in the performance of such acts is deemed to have arisen out of the employment. Such acts are regarded as inevitable incidents of the employment, and accidents happening in the performance of such acts are regarded as arising out of and in the course of employment." (Citations omitted.)

The courts of this state have held that a broad range of activities fit into the personal comfort doctrine, including a visit to the washroom, *Rewis v. Insurance Co., supra*; a smoke break, *Fox v. Mills, Inc.*, 225 N.C. 580, 35 S.E. 2d 869 (1945); a break to partake of refreshment, *Pickard v. Plaid Mills*, 213 N.C. 28, 195 S.E. 28 (1938); and a personal errand involving a temporary absence from the employee's post of duty, *Bellamy v. Manufacturing Co.*, 200 N.C. 676, 158 S.E. 246 (1931).

At the time plaintiff sustained his injury, he was on his way to the station canteen in order to purchase a pack of chewing gum. This activity falls within the broad parameters of the personal comfort doctrine since purchasing gum involves plaintiff's comfort, health or convenience on the job. This conclusion is reflected in the Deputy Commissioner's finding that plaintiff was attempting to satisfy his personal comfort needs at the time he slipped and fell. However, the Deputy Commissioner concluded as a matter of law, and the defendant argues on appeal, that the injury was not compensable because by running, the plaintiff violated a company rule and chose an unreasonable manner or method of tending to his personal comfort.

In *Hoyle v. Isenhour Brick & Tile Co., supra* the Supreme Court articulated a strong policy under the Act that compensation not be denied on the basis of the violation of a safety rule *alone*. Therefore, whether compensation is to be denied because

the plaintiff chose an *unreasonable manner* of seeking his personal comfort becomes a distinct issue for resolution in this case.

The general rule as to personal comfort is stated in 1A Larson, The Law of Workmen's Compensation, § 21.00, p. 5-4 (1982) as follows:

> Employees who, within the time and space limits of their employment, engage in acts which minister to personal comfort do not thereby leave the course of employment, unless the extent of the departure is so great that an intent to abandon the job temporarily may be inferred, or unless, in some jurisdictions, the method chosen is so unusual and unreasonable that the conduct cannot be considered an incident of the employment.

Professor Larson explains that the question of whether the *manner* of seeking personal comfort may disqualify it because the method chosen is unreasonably dangerous or unconventional is a mixed question of "arising" and "course." Larson, *supra*, § 21.10. Further, that some jurisdictions hold that use of a prohibited method of seeking personal comfort is fatal to coverage of such acts because they are already only indirectly related to the employment, although a similar violation of instructions would be immaterial as to some act in direct accomplishment of the work. *See* § 21.80 *et seq.* and § 31.12.

We note that the cases Professor Larson cites as examples of the application of this rule denying compensation for injuries sustained in the performance of acts incidental to the employment are all older cases, involving personal comfort *activities* that were themselves expressly prohibited. § 31.12. Plaintiff's case involves only the *manner* of his seeking comfort. We conclude that running was not so abnormally dangerous, unconventional or unusual a manner of proceeding to the canteen for chewing gum as to take his conduct outside the course and scope of his employment. The testimony before the Deputy Commissioner reveals that running must have been a fairly common practice in the station because the employees were constantly being reprimanded for running. Nor does the fact that running was prohibited mandate a denial of benefits, as it would be contrary to the general principles of law established in *Hoyle*, and discussed earlier in this opinion.

This Court, in *Harless v. Flynn, supra,* cited the following pertinent general rules with respect to the "arising out of employment" requirement:

> The phrase *arising out of* has reference to the origin or cause of the accident . . . But this is not to say that the accident must have been caused by the employment. "Taking the words themselves, one is first struck by the fact that in the 'arising' phrase, the function of employment is passive while in the 'caused by' phrase it is active. When one speaks of an event 'arising out of employment,' the initiative, the moving force, is something other than the employment; the employment is thought of more as a condition out of which the event arises than as the force producing the event in affirmative fashion." 1 Larson, Workmen's Compensation Law, § 6.50, p. 45. The North Carolina Supreme Court has similarly stated the connection between the employment and the accident: "Where any reasonable relationship to the employment exists or employment is a contributory cause, the Court is justified in upholding the award as 'arising out of employment.'" (Citation omitted.)

> \*   \*   \*

> An injury arises out of the employment when it comes from the work the employee is to do, or out of the service he is to perform, or as a natural result of one of the risks of the employment; the injury must spring from the employment or have its origin therein (citation omitted). For an accident to arise out of the employment, there must be some causal connection between the injury and the employment. When an injury cannot fairly be traced to the employment as a contributing proximate cause, or if it comes from a hazard to which the employee would have been equally exposed apart from the employment, or from the hazard common to others, it doesn't arise out of the employment.

1 N.C. App. at 455, 162 S.E. 2d at 52.

The Deputy Commissioner implicitly found, and the Full Commission adopted as a fact, that plaintiff's accident was a consequence of the presence of coal dust which had accumulated on the terrazzo flooring where plaintiff slipped and fell. Plaintiff testified

that the accumulation was probably caused by a coal leak. Defendant is engaged in the business of generating electrical power and the use of coal is indispensable to its business. The risk of slipping and falling on coal dust is particular to plaintiff's employment in a power plant. The hazard of slipping on coal dust accumulated by reason of a coal leak on the workplace floor is not a hazard to which plaintiff would have been equally exposed apart from his employment at the Buck Steam Station. "Where any reasonable relationship to the employment exists, or employment is a contributory cause, the court is justified in upholding the award as 'arising out of employment.'" *Allred v. Allred-Gardner, Inc.*, 253 N.C. 554, 557, 117 S.E. 2d 476, 479 (1960). Plaintiff's employment may therefore be considered *a contributory cause* of the accident and his injuries reasonably related to that employment, since his injury occurred while he was engaged in an activity that may be said to indirectly benefit his employer.

We are unable to conclude that plaintiff's disobedience of the prohibition against running in the Steam Station was sufficient to break the causal connection between the injury and the employment, especially in view of the fact that plaintiff was not violating an immediate and direct order of a then present superior. Therefore, plaintiff's injury by accident arose out of and in the course of his employment and the Full Commission's opinion and award of compensation is

Affirmed.

Judges WHICHARD and EAGLES concur.