MANJIT K. DAYAL AND GURBACHAN S. DAYAL v. PROVIDENT LIFE AND
ACCIDENT INSURANCE COMPANY

No. 8314SC1244

(Filed 6 November 1984)

1. **Insurance § 57; Master and Servant § 55.6— injury suffered while sleeping—
not "in the course of employment"**

In an action to recover under a wife's health insurance policy which ex-
cluded bodily injuries "arising from or in the course of any employment," in-
juries which occurred when a ceiling fan fell on plaintiff husband, a covered
dependent, while he was sleeping in a back area of his convenience store were
not "in the course of his employment." Plaintiff had completely abandoned his
employment for a substantial period, and the fact that he owned the sleeping
area was merely fortuitous.

2. **Insurance § 57; Master and Servant § 55.4— injury suffered while sleeping—
did not "arise from" employment**

Injuries which occurred when a ceiling fan fell on a plaintiff who was tak-
ing a forty-five minute nap in the back of his convenience store did not "arise
from" his employment and were not excluded from coverage under a health in-
surance policy. The conditions and circumstances of plaintiff's employment
would not naturally or probably expose him to the risk of being injured while
he was taking a nap.

APPEAL by plaintiffs from *Barnette, Judge.* Judgment en-
tered 8 August 1983 in DURHAM County Superior Court. Heard in
the Court of Appeals 20 September 1984.

The parties do not dispute the basic facts of the case. Plain-
tiff husband owned and operated a convenience store. Plaintiff's
wife, who worked for Burlington Industries, obtained group
health insurance with defendant Provident, effective at all rele-
vant times, through her employer. Plaintiff husband was a cov-
ered dependent under the policy. During summer hours at the
store, plaintiff husband would take afternoon naps in a back area
while his son, out of school, tended to the business. While plaintiff
husband was thus napping one afternoon, he was struck in the
head by a falling ceiling fan. He suffered severe injuries resulting
in over $18,000 in medical expenses. Defendant denied coverage
and plaintiffs filed suit. Following trial before the court, sitting
without a jury, the court entered judgment for defendant. Plain-
tiffs appealed.

*Walker, Lambe & Crabtree, by Guy W. Crabtree, for plaintiffs.*

*Newsom, Graham, Hedrick, Bryson, Kennon & Faison, by James L. Newsom and Joel M. Craig, for defendant.*

WELLS, Judge.

The policy of insurance on which plaintiff sued contained an exclusion "for treatment of bodily injuries arising from or in the course of any employment." The trial court in rendering judgment for defendant, concluded that the accident which caused plaintiff Manjit Dayal's injuries did not "arise from" Dayal's employment, but did occur "in the course" of such employment. We disagree, and therefore reverse.

The identical exclusionary language relied on by defendant has come before this court once before, where we ruled that the phrase "arising from or in the course of" employment was unambiguous. *Brown v. Insurance Co.*, 35 N.C. App. 256, 241 S.E. 2d 87 (1978). This exclusionary language essentially follows that of the Workers' Compensation Act ("the Act"), which covers injury by accident "arising out of and in the course of the employment." N.C. Gen. Stat. § 97-2(6) (Supp. 1983). A cursory examination of the vast array of cases which have applied this language makes clear that it is anything but unambiguous when sought to be applied to differing factual situations. See cases collected at 19A N.C. Digest *Workmen's Compensation* §§ 608-667 (1965 and Supp. 1984). Our holding in *Brown* must be read in this context. We turn now to the decisions under the Act for guidance in this case.

In applying the principles of workers' compensation law, it must be remembered that case law reflects a long-settled policy that the provisions of the Act are to be construed liberally and in favor of the employee. *See Stevenson v. City of Durham*, 281 N.C. 300, 188 S.E. 2d 281 (1972); 99 C.J.S. *Workmen's Compensation* § 20 (1958). This case involves application of exclusionary provisions of an insurance policy, on the other hand, and a different public policy governs: since the insurer prepares the contract of insurance, doubts as to its effect are resolved against the insurer and in favor of coverage. *See Woods v. Insurance Co.*, 295 N.C. 500, 246 S.E. 2d 773 (1978); 13 J. Appleman & J. Appleman, Insurance Law and Practice § 7401 (1976).

Dayal v. Provident Life and Accident Ins. Co.

[1]  The trial court ruled that plaintiff husband's injury occurred "in the course of" his employment. The term, as used in workers' compensation cases, refers to the time, place, and circumstances of the accident. *Hoyle v. Isenhour Brick and Tile Co.*, 306 N.C. 248, 293 S.E. 2d 196 (1982). Activities which an employee undertakes in pursuit of his personal comfort constitute part of the circumstances of the course of employment. *Spratt v. Duke Power Co.*, 65 N.C. App. 457, 310 S.E. 2d 38 (1983). The "personal comfort doctrine," relied on by the trial court, provides a test for determining when such activities fall within the course of the employment:

> An employee, while about his employer's business, may do those things which are necessary to his own health and comfort, even though personal to himself, and such acts are regarded as incidental to the employment. . . .

> "Such acts as are necessary to the life, comfort and convenience of the workman while at work, though personal to himself, and not technically acts of service, are incidental to the service; and an accident occurring in the performance of such acts is deemed to have arisen out of the employment. Such acts are regarded as inevitable incidents of the employment, and accidents happening in the performance of such acts are regarded as arising out of and in the course of the employment."

*Id.* (quoting *Rewis v. Insurance Co.*, 226 N.C. 325, 38 S.E. 2d 97 (1946) ). (Citations omitted.)

Various personal comfort activities have been held by North Carolina courts to fall within the course of employment under the doctrine. *See Rewis v. Insurance Co., supra* (visit to washroom); *Fox v. Mills, Inc.*, 225 N.C. 580, 35 S.E. 2d 869 (1945) (smoke break); *Spratt v. Duke Power Co., supra* (visit to canteen). The activity involved here, sleeping, appears however to be squarely before our courts for the first time.[1]

---

1. Sleeping on the job was involved in *Stallcup v. Wood Turning Co.*, 217 N.C. 302, 7 S.E. 2d 550 (1940). However, as Justice Seawell's dissent in *Stallcup* made clear, the evidence was equivocal and the sleeping apparently was only one of several factors in the decision.

The courts of other states have split on whether injuries incurred while sleeping on the job arise in the course of employment. Generally, such injuries do *not* arise in the course of employment if (1) sleeping is contrary to positive duties of the employee, *Union Indem. Co. v. Malley*, 1 S.W. 2d 923 (Tex. Civ. App. 1927), *rev'd on other grounds*, 12 S.W. 2d 1002 (Tex. 1929) (watchman); or (2) where the sleep is unintentional, *Culberson v. Daniel Hamm Drayage Co.*, 286 S.W. 2d 813 (Mo. 1956); or (3) where there is an enforced lull in work. *Spencer v. Chesapeake Paperboard Co.*, 186 Md. 522, 47 A. 2d 385 (1946).

Where the sleep is intentional, however, it appears that the extent of the departure from work and the nature of the work itself are determinative. Thus, if the employee rests briefly, especially if the physical nature of the job suggests it, sleep during intentional rest may be in the course of employment. *Richards v. Indianapolis Abattoir Co.*, 92 Conn. 274, 102 A. 604 (1917) (driver slept briefly near boiler on cold day). This is consistent with the North Carolina rule that *temporary* absences from work usually are within the course of the employment. *Harless v. Flynn*, 1 N.C. App. 448, 162 S.E. 47 (1968). On the other hand, where the employee deliberately abandons his work for a substantial time and goes off to sleep, intentional sleep may be outside the course of the employment. *Colucci v. Edison Portland Cement Co.*, 94 N.J. Law 542, 111 A. 4 (1920) (asleep three hours while work backlog developing). Again, North Carolina follows a similar rule with respect to the degree to which an employee departs from his duties. *See Jackson v. Dairymen's Creamery*, 202 N.C. 196, 162 S.E. 359 (1932) ("total" departure from assigned duty not in course of employment).

With the foregoing principles in mind, we hold that the trial court erred in concluding that the accident occurred "in the course of" plaintiff's employment. Plaintiff had left the work area and had gone off to another area, totally unused in his business, to sleep for forty-five minutes. The fact that plaintiff also owned the sleeping area appears merely fortuitous and does not affect the result. This is especially true in light of the uncontradicted evidence that plaintiff's son never disturbed him during his naps. Plaintiff having completely abandoned his employment for a sub-

stantial period, the accident that befell him accordingly did not occur in the course of his employment.[2]

[2]   Defendant cross-assigns error to the trial court's ruling that the accident did not "arise from" the employment. In the context of this case, we conclude that "arising from" in the policy means the same as "arising out of." The trial court used this interpretation. As used in the Act, "arising out of" refers to the origin or causal connection of the accidental injury to the employment. *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 233 S.E. 2d 529 (1977). The controlling test of whether an injury "arises out of" the employment is whether the injury is a natural and probable consequence of the nature of the employment. *Id.* The conditions or obligations of the employment must have put the employee at the place where the accident occurred. *Pittman v. Twin City Laundry*, 61 N.C. App. 468, 300 S.E. 2d 899 (1983). Such was not the case here. The conditions and circumstances of Manjit Dayal's employment, the nature of his employment, were not such as to naturally or probably expose him to the risk of being injured while he was taking a forty-five minute nap. Defendant's argument must be rejected, and defendant's cross-assignment of error is overruled.

On the undisputed facts of this case, plaintiffs are entitled to judgment in their favor on the issue of liability, and it is so ordered. The case must be remanded for appropriate findings and judgment as to damages.

Reversed and remanded.

Judges ARNOLD and HILL concur.

---

2. The trial court ruled that the sleep period "benefitted" the employment. The court misapplied a rule which deals with injuries occurring during unauthorized work activities, not under the personal comfort doctrine. *See Hoyle v. Isenhour Brick and Tile Co., supra.*