Billy L. VANCE, Plaintiff-Appellee,

v.

PILOT LIFE INSURANCE COMPANY, Defendant-Appellant,

Lumbermen's Mutual Casualty Company, Third-Party Defendant.

No. 86–3685.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 6, 1987.

Decided Oct. 21, 1987.

Steven Timonere, Barbara E. Machin, Doyle, Lewis & Warner, Toledo, Ohio, Patricia G. Lyden, argued, for defendant-appellant.

William H. Horton, argued, Cook, Pringle, Simonsen & Goetz, Detroit, Mich., for plaintiff-appellee.

Barry Fissel, Eastman & Smith, Toledo, Ohio, Robert J. Gilmer (Lead) argued, for third-party defendant.

Before MERRITT and RYAN, Circuit Judges, and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

Defendant-Appellant Pilot Life Insurance Co. (Pilot Life) appeals the order of the district court granting summary judgment in favor of plaintiff-appellee Billy Vance in this dispute over the scope of Pilot Life's medical insurance contract with Vance. Pi-

lot Life argues that the district court erred as a matter of law in concluding that a particular clause in the contract did *not* exclude coverage under the circumstances of this case. For the following reasons, we affirm.

The pertinent facts are undisputed.

From 1973 until mid–1984 Vance was a successful racer of high-speed "drag" boats. In late 1983, the president of Cra-Mac Racing, Inc. (Cra-Mac) retained Vance to drive Cra-Mac's drag boat during the upcoming 1984 racing season, which was to consist of eight races. In exchange for Vance's services, Cra-Mac agreed to pay Vance $500 per race plus travel and lodging expenses. Cra-Mac was not obligated, however, to withhold federal or state income taxes, pay FICA or unemployment compensation taxes, or to provide workmen's compensation coverage, vacation time, sick leave or any other fringe benefit. Vance had to purchase, at his own expense, all equipment necessary to drive Cra-Mac's drag boat, including fireproof clothing, helmet, gloves, life jacket, parachute and driver's bag. Vance had unfettered discretion to drive the boat as he saw fit for the entire eight-race 1984 racing season.

On June 24, 1984, during the season's fourth race, Vance crashed in Cra-Mac's boat and suffered serious injury. Vance's medical expenses are now at $200,000 plus and rising.

Throughout Vance's boat-racing career, Vance held full-time jobs completely removed from boat-racing. At the time of the fateful accident, Vance was a salesman for Honda Cars of Concord, North Carolina. As a benefit of that employment, Vance was insured through this Pilot Life group policy providing, *inter alia*, major medical expense benefits up to $1,000,000.

Following the accident, Vance submitted a claim to Pilot Life for payment of medical expenses incurred for treatment of his injuries sustained in that accident. Pilot Life initially accepted the claim and paid approximately $30,000 in benefits, but later denied coverage on the basis of the following exclusion in the group insurance policy:

> Benefits are not payable for expenses ... (b) due to any injury arising out of or in the course of any employment for compensation or profit.

Pilot Life maintained that Vance's medical expenses were due to injuries arising out of "employment for compensation" within the meaning of the exclusion.

In response, Vance filed this diversity-based declaratory judgment action against Pilot Life seeking a declaration of the parties' rights and obligations under the insurance policy. Pilot Life filed an answer and a counterclaim against Vance seeking reimbursement of the $30,000 it had already paid. Vance then filed an answer to Pilot Life's counterclaim and a third-party complaint against Lumbermen's Mutual Casualty Co. (Lumbermen's) alleging that, pursuant to a separate medical insurance contract between Vance and Lumbermen's, Lumbermen's must pay any judgment rendered against Vance in favor of Pilot Life.

Vance and Lumbermen's filed motions for summary judgment on the ground that, as a matter of law, Vance's injuries did not arise out of "any employment for compensation or profit" within the meaning of the insurance policy's exclusionary provision. Pilot Life filed a cross-motion for summary judgment arguing that, as a matter of law, Vance's injuries did indeed arise out of such "employment." The parties agree that, at that point, the case was ripe for decision on those summary judgment motions.

The district court granted Vance's and Lumbermen's summary judgment motions and denied Pilot Life's. In the district court's view, the exclusionary clause is ambiguous as to whether Vance's boat-racing activity constitutes "employment." To support that view, the district court noted that Vance's expenses essentially equalled his remuneration and that Pilot Life has now modified the exclusionary clause to address injuries arising out of racing activities. The district court went on to recognize that under North Carolina law an ambiguous insurance provision must be con-

strued against the insurer.[1] The district court held, therefore, that the "any employment" exclusion does not encompass Vance's boat-racing activity and that Vance was thus entitled to summary judgment. The district court also observed:

> As plaintiff's third-party complaint against Lumbermens is premised solely upon his alleged liability to Pilot on Pilot's counterclaim, an award of judgment in favor of plaintiff against Pilot renders moot plaintiff's third-party complaint against Lumbermens and Lumbermens' motion for summary judgment is therefore found well taken.

Pilot Life filed a notice of appeal directed to the grant of Vance's summary judgment motion. Vance did *not* file a notice of appeal of the district court's grant of Lumbermen's summary judgment motion in his third-party action.

The question we face on appeal is whether Vance was, at the time of the accident, engaged in "any employment for compensation or profit" within the meaning of the insurance contract's exclusion. That question is difficult because, as the North Carolina courts have recognized, "[a] cursory examination of the vast array of cases which have applied this language makes clear that it is anything but unambiguous when sought to be applied to differing factual situations." *Dayal v. Provident Life & Accident Ins. Co.*, 71 N.C.App. 131, 132, 321 S.E.2d 452, 453 (1984) (construing identical language). Under North Carolina law, to help answer that question we may look to cases defining "employment" for purposes of coverage under North Carolina's Workmen's Compensation Act. *Id.* Those cases establish the following test for determining whether a claimant is a covered employee or an unprotected independent contractor:

> Some of the factors considered are whether: "[t]he person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; (h) selects his own time."

*Doud v. K & G Janitorial Services*, 69 N.C.App. 205, 211–12, 316 S.E.2d 664, 669 (1984) (quoting *Hayes v. Board of Trustees*, 224 N.C. 11, 16, 29 S.E.2d 137, 140 (1944)).

Applying those factors here, Vance clearly was not engaged in employment at the time of the accident. Vance used his special skill in the execution of his task; Vance was engaged in a specified task for which he was paid a lump sum; Cra-Mac could not discharge Vance for the way in which Vance chose to carry out the task; and Cra-Mac did not regularly employ Vance. Therefore, the application of Workmen's Compensation principles, which application is appropriate under North Carolina law, strongly suggests that the "any employment" language does not encompass the arrangement between Vance and Cra-Mac. That suggestion suffices to create ambiguity in the exclusionary language in this context. Consequently, because North Carolina law requires that we construe ambiguous language in an insurance contract in favor of the insured, *Dayal*, 71 N.C.App. at 132, 321 S.E.2d at 453, we hold that the exclusion does not bar coverage.

Two other factors inform our result. First, even without the guidance of Workmen's Compensation principles, we would be inclined to hold the exclusion to be ambiguous, although admittedly the question would be much closer. The term "employment" (even when modified by "any") commonly connotes an ongoing, pervasive relationship involving more than just the exchange of remuneration for the completion of some task. For example, the term does not naturally encompass a sporadic, fleeting, unusual and highly specialized rela-

---

**1.** The parties agree that North Carolina law controls.

tionship such as that between a tennis shoe manufacturer and a professional tennis player paid to wear the manufacturer's shoes during matches. Likewise here, the term "employment" does not easily and automatically encompass the brief, intermittent, basically promotional relationship between Cra-Mac and Vance. At a minimum, it is arguable that if the parties intended the exclusion to reach as far as this case, they would have used the broader and much less technically encumbered phrase "any activity."

Moreover, because the exclusion in question is part of a group policy provided as a benefit of employment with Honda Cars of Concord, and workmen's compensation covers injuries arising out of that employment, it is reasonable to surmise that the parties may have intended the "any employment" language to refer just to any activity done on behalf of Honda Cars of Concord, not to any activity at all yielding remuneration. In other words, the parties may have meant the exclusion to serve the salutory purpose of avoiding both double coverage and no coverage. Thus, again, the exclusionary language appears ambiguous.

In sum, under North Carolina law, the exclusionary clause in Pilot Life's policy is ambiguous as applied to the facts of this case, and ambiguous provisions in insurance policies must be construed in favor of the insured. Consequently, we hold that the exclusionary clause does not bar coverage. In turn, we AFFIRM the district court's order granting Vance's summary judgment motion and denying Pilot Life's.[2]

---

**2.** Because we affirm the district court's grant of Vance's summary judgment motion, we need not decide whether we have jurisdiction to re-verse the grant of Lumbermen's summary judgment motion.