ALLMON v. ALCATEL, INC.

[124 N.C. App. 341 (1996)]

━━━━━━━━━

PATSY ALLMON, EMPLOYEE, PLAINTIFF V. ALCATEL, INC., EMPLOYER; CIGNA INSURANCE COMPANY, CARRIER; DEFENDANTS

No. COA94-1244

(Filed 5 November 1996)

1. **Workers' Compensation § 292 (NCI4th)— federal discrimination claim—settlement proceeds not wages—termination of workers' compensation benefits error**

   The Industrial Commission erred in holding that the settlement proceeds from plaintiff's federal handicap discrimination claim against defendant employer constituted "wages" and she therefore was not entitled to temporary total disability benefits, since the federal discrimination claim and the worker's compensation claim were based on two separate and distinct injuries, and recovery for both would not give plaintiff double recovery for a single action.

   **Am Jur 2d, Americans with Disabilities Act: Analysis and Implications §§ 1, 257; Job Discrimination § 174; Workers' Compensation §§ 381-384.**

2. **Workers' Compensation § 301 (NCI4th)— refusal to pay benefits—assessment of penalty—appropriate time period**

   The Industrial Commission erred in assessing a penalty against defendant under N.C.G.S. § 97-18(e) only for the period

ALLMON v. ALCATEL, INC.

[124 N.C. App. 341 (1996)]

running from the date of the Commission's first order to reinstate benefits to the date of the Commission's approval of defendant's Form 24 request, rather than from the date defendant unilaterally terminated plaintiff's benefits until the date of plaintiff's reinstatement, since the statute requires payment of the penalty from the date the benefits are due but not paid, and the Form 24 was effectively vacated by the Claims Examiner two months after its initial approval.

**Am Jur 2d, Workers' Compensation § 477.**

**Tort liability of worker's compensation insurer for wrongful delay or refusal to make payments due. 8 ALR4th 902.**

On appeal from the opinion and award entered on 11 July 1994 by the North Carolina Industrial Commission. Heard in the Court of Appeals 24 August 1995.

*Monroe, Wyne & Lennon, P.A., by George W. Lennon, for plaintiff appellant.*

*Cranfill, Sumner & Hartzog, L.L.P., by Patrick H. Flanagan, for defendant appellees.*

COZORT, Judge.

In this case, plaintiff suffered a back injury compensable under the North Carolina Workers' Compensation Act. Defendant resisted payment of workers' compensation benefits due plaintiff, by cutting off benefits despite contrary direction by the Industrial Commission. During the pendency of this workers' compensation dispute, plaintiff filed a separate federal claim alleging handicap discrimination. The federal discrimination claim was settled out of court in 1990, for a monetary remedy and reinstatement of plaintiff to her former position. The settlement reserved plaintiff's rights to her workers' compensation claims. Plaintiff requested a hearing with the Industrial Commission alleging she was due additional compensation because of defendant's cessation of benefits; plaintiff also alleged that a penalty should be assessed against defendant for untimely payment of benefits. The Commission held that the settlement of the federal discrimination claim constituted "wages." The Commission denied plaintiff's claim for benefits. We find the Commission erred in classifying the settlement proceeds as "wages," and we reverse. The facts and procedural history follow.

ALLMON v. ALCATEL, INC.

[124 N.C. App. 341 (1996)]

The plaintiff, Patsy Allmon, suffered an injury on 26 July 1980 and an injury on 10 November 1980. The first injury occurred when plaintiff was hit by boxes falling from a forklift. The second injury, and the source of the present compensation controversy, resulted when a coworker tripped and hit plaintiff, knocking her down against a pallet. The second accident caused plaintiff severe injury, forcing her to undergo multiple surgical operations, including several spinal fusions.

On 11 March 1987, plaintiff was released by her orthopedic surgeon, with a twenty-percent permanent impairment rating of the back. Due to plaintiff's impaired condition, she was medically restricted from jobs involving certain kinds of lifting. Plaintiff sought to return to work; however, she was told by defendant-employer, on or about 29 May 1987, that no jobs were available meeting her medical requirements.

On 28 September 1987, defendant terminated plaintiff's temporary total disability benefits without the necessary Form 24 approval by the Industrial Commission (Commission). On 10 November 1987, the Commission ordered defendant to reinstate benefits, retroactive to the 28 September 1987 date of defendant's unilateral suspension of benefits. On 18 November 1987, the Commission repeated its order. Defendant complied with neither order. Defendant submitted a Form 24 to the Commission on or about 11 April 1988, which was approved, and which operated to terminate defendant's obligation to pay plaintiff temporary total disability.

On 20 June 1988, the Commission's Chief Claims Examiner ("Examiner") ordered defendant to reinstate benefits withheld from plaintiff for the period during which defendant had no Form 24 Commission approval. The Examiner also vacated approval of the Form 24, nullifying its effect and reinstating plaintiff's temporary total disability payments. The effective retroactive date for benefit reinstatement was not explicitly set forth in the Examiner's order. However, the order directed defendant to pay benefits prospectively from the date of the order, until otherwise notified by the Commission. The record indicates no retroactive or prospective benefits were ever paid by defendant pursuant to the Examiner's 20 June 1988 order.

Plaintiff filed charges of federal handicap discrimination with the United States Department of Labor in September 1989. On 2 May 1990, plaintiff and defendant settled the federal claims through an

ALLMON v. ALCATEL, INC.

[124 N.C. App. 341 (1996)]

agreement entitled "General Release and Settlement Agreement" (Agreement). This Agreement provided plaintiff with $51,235.20 in settlement proceeds and reinstatement to her former position with defendant. Plaintiff was reinstated on 4 May 1990. In the Agreement's recitals, defendant states it "has agreed to this settlement solely to avoid future expense and inconvenience." As well, defendant promised to pay plaintiff $51,235.20, "representing back pay from September 28, 1987 until May 4, 1990 . . . ." Section two of the recitals, entitled "Reservation of Workers' Compensation Claim," states that the Agreement "does not constitute a waiver of any rights . . . which are compensable under applicable workers' compensation laws." Plaintiff, in recital section four, agreed specifically to withdraw her federal claim and to request termination of the Department of Labor's discrimination investigation.

On 17 March 1992, plaintiff filed a "Request That [a workers' compensation] Claim Be Assigned For Hearing" (Request). Subsequently, a hearing was held before Industrial Commission Deputy Commissioner Charles Markham on 27 March 1992. Plaintiff's claim before the Deputy Commissioner included, *inter alia*, a renewed request for temporary total disability running from defendant's unilateral cessation of benefits on 28 September 1987 to 4 May 1990 (the date of plaintiff's reinstatement pursuant to the settlement agreement); and, a penalty of ten percent for untimely payment of the aforementioned temporary total disability benefits per N.C. Gen. Stat. § 97-18(e) (1991). Deputy Commissioner Markham entered an opinion and award denying plaintiff's claim for additional disability compensation.

On appeal, the Full Commission denied plaintiff's claim for additional benefits. As part of its opinion and award filed 11 July 1994, the Full Commission reached two conclusions of law relevant to this appeal. First, the Full Commission declared that settlement proceeds from the discrimination claim were "wages" as a matter of law. The Full Commission then denied plaintiff's request for temporary total disability benefits, holding that the

effect of the May 4, 1990 agreement is that plaintiff was not disabled during [the 28 September 1984 to 4 May 1990 period] cited [in the Agreement] within the meaning of the Workers' Compensation Act, because the lump sum payment replaced "wages" she would have been earning . . . .

The Commission determined that a ten-percent penalty was due plaintiff, pursuant to N.C. Gen. Stat. § 97-18(e), but only for the period between 10 November 1987 (the date of the Commission's first directive to defendant to pay benefits) until the date of the Form 24 approval on 26 April 1988.

[1] We disagree with the Commission's conclusion that the settlement proceeds are "wages" as a matter of law. We also disagree with the period set by the Commission for assessment of the § 97-18(e) penalty. While the scope of this Court's review of Commission findings is limited to a competent evidence standard, conclusions of law are entirely reviewable for error. *Grant v. Burlington Industries, Inc.*, 77 N.C. App. 241, 247, 335 S.E.2d 327, 332 (1985).

Defendant characterizes plaintiff's discrimination claim as arising out of the same injury and set of facts as the claim for workers' compensation. Allowing both, defendant claims, is tantamount to handing plaintiff a "double recovery" for a single injury, an action expressly prohibited by the workers' compensation statute and case law. In *Foster v. Western-Electric Co.*, 320 N.C. 113, 357 S.E.2d 670 (1987), our Supreme Court stated that the Workers' Compensation Act "disfavors duplicative payments for the same disability." *Id.* at 117, 357 S.E.2d at 673. For reasons which follow, we find *Foster* does not control the instant situation.

As opposed to the plaintiff in *Foster*, the instant plaintiff has alleged two distinct, separately remedial injuries. Plaintiff's first claim is based on the physical injury which led to the workers' compensation claim. The second injury claimed by plaintiff arose from defendant's alleged handicap discrimination. The *Foster* plaintiff sought two recoveries from a single injury: money from private disability income insurance paid for by the employer, and workers' compensation. *Foster*, 320 N.C. at 114, 117 n.1, 357 S.E.2d at 671, 673 n.1. The *Foster* Court found that the private disability payout "function[ed] as a wage replacement program tantamount to workers' compensation." *Id.* at 117, 357 S.E.2d at 673. Since the private plan operated "in lieu" of workers' compensation, payment under both was a double recovery and was barred by statute. *Id.*; and *see* N.C. Gen. Stat. § 97-31 (1991) (workers' compensation "shall be paid for disability . . . and shall be in lieu of all other compensation.") In *Estes* v. *N.C. State University*, 102 N.C. App. 52, 58, 401 S.E.2d 384, 387-88 (1991), an employer-defendant argued it was entitled to a credit against an award of temporary total disability benefits paid to

its employee because the employer had also paid its disabled employee sick leave and vacation benefits. *See also* N.C. Gen. Stat. § 97-42 (1991) (credits allowed only when payments to employee were not due and payable under the Act when made by employer). The *Estes* Court determined that sick leave was often utilized for noninjury related purposes, such as a "family illness or death in the family." *Estes*, 102 N.C. App. at 58, 401 S.E.2d at 387. The varying objectives of workers' compensation and sick leave led the *Estes* Court to determine that "using sick leave is not tantamount . . . to receiving workers' compensation benefits." *Id.* at 59, 401 S.E.2d at 387-88. Since the sick leave benefits had "nothing to do" with the Workers' Compensation Act, they were "not analogous to payments under a disability and sickness plan." *Id.* at 59, 401 S.E.2d at 388. Thus, the benefits were not duplicative, and no set-off was due. *Id.*

The analysis of the *Estes* Court is instructive here, in that we do not find plaintiff's recovery for discrimination "analogous to payments under a disability and sickness plan." *Id.* The concepts of "workplace disability" and "handicap discrimination" are innately different, and the remedies for either necessarily distinct. The nature of the injuries are different: one is essentially physical, the other primarily based on prejudice or bias. *See, e.g., Barber v. Minges*, 223 N.C. 213, 216, 25 S.E.2d 837, 839 (1943) (purpose of the Act is to compel industry to take care of its injured workers); *Teamsters v. United States*, 431 U.S. 324, 358, 52 L.Ed.2d 396, 429 (1977) (Title VII addresses employment decisions based on illegal discriminatory criteria).

The Workers' Compensation Act and the federal civil rights laws address different ills and make up entirely separate bodies of law. The purpose of workers' compensation is to provide an employee with "swift and sure compensation" for harm resulting from workplace injury. *Rorie v. Holly Farms*, 306 N.C. 706, 709, 295 S.E.2d 458, 460 (1982). On the other hand, civil rights laws have a more global goal: "to abolish the smallness of mind that clings to pernicious stereotypes founded not on fact but upon historical misconceptions and fear." *Freeman v. Kevinator, Inc.*, 469 F.Supp. 999, 1000 (E.D. Mich. 1979).

Thus, federal laws against discrimination remedy injuries that often carry far-reaching social, political and economic implications. *See, e.g., Memphis Community School District v. Stachura*, 477 U.S. 299, 91 L.Ed.2d 249 (1986). Because Congress considers policy

ALLMON v. ALCATEL, INC.

[124 N.C. App. 341 (1996)]

against discrimination to be of the highest priority, it has given the courts broad remedial power in the area of federal civil rights. *Alexander v. Gardner-Denver Company*, 415 U.S. 36, 44-46, 39 L.Ed.2d 147, 156-57 (1974). It appears manifest that Congress did not intend to force a worker to choose between remedies under workers' compensation and those available under federal civil rights laws. *Id.* at 48, 39 L.Ed.2d at 158 (legislative history of the civil rights acts evinces "a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes.")

Another critical distinction between plaintiff's workplace injury and the discrimination-based injury is the distinct causal origin of both. Plaintiff's back was injured first. Later, plaintiff filed a claim alleging defendant had made a discriminatorily based employment decision not to rehire her. Thus, the timing of the injuries was not concurrent. It is uncontradicted that defendant's alleged discrimination was based on, and arose after, plaintiff's back-related injury. Simply put, the two injuries are not the same. The settlement of a claim for federal civil rights violations is not, nor was it intended to be, a substitute for workers' compensation benefits. The Agreement clearly reserved all rights to remedies available to plaintiff under the Workers' Compensation Act. No set-off or credit is due defendant.

[2] The separate but connected issue of the late payment fee is resolvable by a plain reading of the applicable statute, N.C. Gen. Stat. § 97-18(e). In pertinent part, the statute reads:

If any installment of compensation payable in accordance with the terms of an agreement approved by the Commission is not paid within 14 days after it becomes due . . . there *shall* be added to such unpaid installment an amount equal to ten per centum (10%) thereof . . . unless such nonpayment is excused by the Commission after a showing by the employer that owing to conditions over which he had *no control* such installment could not be paid within the period prescribed for the payment.

(Emphasis added.)

As we have already concluded that plaintiff's right to temporary total disability was not foreclosed by settlement of her discrimination claim, defendant's exposure to the ten-percent § 97-18(e) penalty is evident. Defendant unilaterally suspended payment of temporary total disability to plaintiff on 28 September 1987, without Commission approval or submission of a Form 24. On 10 November

**ALLMON v. ALCATEL, INC.**

[124 N.C. App. 341 (1996)]

1987, the Commission ordered defendant to reinstate benefits, and to pay such benefits retroactively to the date of their initial suspension on 28 September 1987. Despite repeated orders by the Commission, defendant did not reinstate the benefits due plaintiff. In fact, the record indicates that no reinstated benefits have ever been paid plaintiff. Moreover, defendant did not comply with the Commission's administrative rules which require submission and approval of a Form 24 prior to benefit termination. Industrial Commission Rule 404 (1996); and see *Kisiah v. W. R. Kisiah Plumbing*, 124 N.C. App. 72, 476 S.E.2d 434 (1996).

The Full Commission, in its opinion and award, assessed a § 97-18(e) penalty against defendant, but only for the period running from 10 November 1987 (the date of the Commission's first order to reinstate benefits), to 26 April 1988 (the date of the Commission's approval of defendant's Form 24 request). Establishment of this time frame for imposition of the penalty is error for two reasons. First, the Full Commission has failed to provide for a penalty from the date it became due, which was 28 September 1987 (the date defendant unilaterally terminated plaintiff's benefits). This failure violates § 97-18(e)'s mandate to pay the penalty from the date the benefits were due, but not paid. Second, the Full Commission erred by using the approval date of the Form 24 as the termination date for the penalty, as that Form 24 was effectively vacated by the Claims Examiner on 20 June 1988.

Failure to award the penalty for the full time period would run afoul of the long-settled policy of interpreting the Workers' Compensation Act liberally, and in favor of the employee. *Dayal v. Provident Life and Accident Ins. Co.*, 71 N.C. App. 131, 132, 321 S.E.2d 452, 453 (1984). By the mandate of § 97-18(e), defendant is responsible for the penalty from 28 September 1987 through plaintiff's reinstatement date at Alcatel of 4 May 1990.

In summary the Full Commission's decision as to temporary total disability benefits due is reversed. The case is remanded to the Commission for entry of benefits and penalty consistent with this opinion.

Reversed and remanded.

Judge McGEE concurs.

Judge WALKER concurs in the result.