TAMMY P. FROST, EMPLOYEE v. SALTER PATH FIRE & RESCUE, EMPLOYER,
VOLUNTEER SAFETY WORKERS' COMPENSATION FUND, CARRIER

No. 181A06

(Filed 26 January 2007)

**Workers' Compensation— injury not arising from employment—Fun Day go-cart accident**

Injury in a go-cart accident is not inherent in being an EMT, and the findings of the Industrial Commission do not support the conclusion that a workers' compensation plaintiff suffered an injury by accident arising from her employment as an EMT when she was injured in a go-cart accident at a Fun Day in a recreational park. Plaintiff's operation of the go-cart was invited, but not required, as a matter of good will.

Justice TIMMONS-GOODSON dissenting.

Justice HUDSON did not participate in the consideration or decision of the case.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 176 N.C. App. 482, 628 S.E.2d 22 (2006), affirming an opinion and award filed on 8 February 2005 by the North Carolina Industrial Commission. On 29 June 2006, the Supreme Court allowed defendants' petition for discretionary review of additional issues. Heard in the Supreme Court 22 November 2006.

*Ward and Smith, P.A., by S. McKinley Gray, III and William A. Oden, III, for plaintiff-appellee.*

*Cranfill, Sumner & Hartzog, L.L.P., by Jonathan C. Anders and Meredith L. Taylor, for defendant-appellants.*

BRADY, Justice.

On 30 September 2001, plaintiff Tammy P. Frost, a volunteer emergency medical technician (EMT) with defendant Salter Path Fire & Rescue, was injured while operating a go-cart, an off road recreational vehicle, at a private amusement park during a "Fun Day" event for Salter Path Fire & Rescue volunteers.[1] The question

---

1. Although plaintiff was a volunteer EMT, both parties have stipulated that the parties are subject to and bound by the Workers' Compensation Act and that, for purposes of the Act, an employer-employee relationship existed between plaintiff and defendant on the date of the injury.

presented is whether plaintiff's injury arose out of her employment. We hold that it did not. Because the Commission's findings of fact do not support its conclusions of law, we reverse and remand the decision of the Court of Appeals.

## FACTUAL BACKGROUND

Plaintiff Tammy P. Frost was injured operating a go-cart at a private amusement park on 30 September 2001 at the second annual "Fun Day" arranged by defendant Salter Path Fire & Rescue. After operating the go-cart for approximately one hour, plaintiff was injured when she rounded a corner on the track and collided with another go-cart. She was transported to the hospital emergency department for evaluation, where she was diagnosed with a cervical strain and released the same day. Plaintiff asserts that as a result of the go-cart accident, she now suffers from unresolved neck and back pain that prevents her from working altogether.

Plaintiff served as the volunteer emergency medical services (EMS) captain for Salter Path Fire & Rescue.[2] Her position as captain involved making sure the ambulances were stocked, cleaned, and ready for use, as well as ensuring that calls to the department were handled properly. Plaintiff testified during the hearing before the North Carolina Industrial Commission (Commission) that she had volunteered as an EMT for the Salter Path Fire & Rescue Department on and off for approximately twenty years.

The concept of a "Fun Day" as a way for the community to show appreciation for Department volunteers and their families was first discussed at a meeting of Department members in 2000. The costs of the event were not paid out of the Department's operating budget, but were funded entirely by community donations and paid out of a special account. Attendees did sign a roster upon arrival; however, testimony demonstrated one purpose of the roster was to determine the number of participants in order to calculate payment to the amusement park.

The Commission made a finding of fact that participation in "Fun Day" was voluntary, although volunteers were encouraged to attend if possible. Many of the EMT volunteers did not attend the event in 2001. Plaintiff testified that her role at "Fun Day" was merely partici-

---

2. Plaintiff was also employed as a waitress at a seasonal restaurant. However, the issues on appeal solely relate to plaintiff's benefits from her service with defendant.

patory, although she did plan to personally thank the volunteers. The testimony further shows that no awards or recognitions were given at the event, nor were there any organized discussions concerning work or the Department.

## PROCEDURAL HISTORY

Defendant's insurance carrier denied plaintiff's claim for compensation based on her injury in a filing with the Commission on 3 October 2001. The stated reason for the denial was that the injury was "not by accident within the course and scope of" plaintiff's employment. Plaintiff requested that the claim be assigned for hearing on 4 June 2002. A deputy commissioner denied plaintiff's claim for compensation on 29 April 2004, from which plaintiff appealed to the Full Commission. The Full Commission reviewed plaintiff's claim and, on 8 February 2005, filed its opinion and award reversing the decision of the deputy commissioner and awarding plaintiff benefits for temporary total disability. Defendants filed a notice of appeal from the decision of the Full Commission to the North Carolina Court of Appeals.

On 7 March 2006, a divided panel of the North Carolina Court of Appeals issued its opinion holding that the evidence in the record did support the findings of fact, which in turn supported the conclusions of law, and that the Full Commission properly determined that plaintiff suffered a compensable injury resulting in temporary total disability. The dissent disagreed, stating that some of the Full Commission's findings of fact were not supported by competent evidence in the record, and therefore the findings did not in turn support the conclusions of law reached by the Commission. Defendants filed a notice of appeal as of right based on the dissent.

This Court allowed defendants' petition for discretionary review as to additional issues to consider whether the Commission erred in finding and concluding that plaintiff met her burden to show the existence and extent of her alleged disability from the date of her injury until April 2003. Due to our holding on the arising-out-of-employment issue, we need not address the issue presented in defendants' petition for discretionary review.

## STANDARD OF REVIEW

"[W]hen reviewing Industrial Commission decisions, appellate courts must examine 'whether any competent evidence supports the Commission's findings of fact and whether [those] findings . . . support the Commission's conclusions of law.' " *McRae v. Toastmaster,*

*Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 700 (2004) (citation omitted). "Whether an accident arose out of the employment is a mixed question of law and fact." *Sandy v. Stackhouse, Inc.*, 258 N.C. 194, 197, 128 S.E.2d 218, 221 (1962) (citations omitted).

## ANALYSIS

The workers' compensation system is a creature of statute enacted by the General Assembly and is codified in Chapter 97 of the North Carolina General Statutes.

> The social policy behind the Workers' Compensation Act is twofold. First, the Act provides employees swift and certain compensation for the loss of earning capacity from accident or occupational disease arising in the course of employment. Second, the Act insures limited liability for employers. Although the Act should be liberally construed to effectuate its intent, the courts cannot judicially expand the employer's liability beyond the statutory parameters.

*Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 190, 345 S.E.2d 374, 381 (1986) (citations omitted). "The purpose of the [Workers' Compensation] Act . . . is not only to provide a swift and certain remedy to an injured work[er], but also to insure a limited and determinate liability for employers." *Barnhardt v. Yellow Cab Co.*, 266 N.C. 419, 427, 146 S.E.2d 479, 484 (1966) (citation omitted).

Section 97-2(6) of the North Carolina General Statutes states the definition of injury under the Workers' Compensation Act (Act) and articulates the controlling rule in the case *sub judice*: " 'Injury and personal injury' shall mean only injury by accident arising out of and in the course of the employment . . . ." N.C.G.S. § 97-2(6) (2005). " 'Arising out of employment' refers to the manner in which the injury occurred, or the origin or cause of the accident." Leonard T. Jernigan, Jr., *North Carolina Workers' Compensation: Law and Practice* § 5-3, at 38 (2d ed. 1995) [hereinafter Jernigan, *Workers' Compensation*] (citing *Taylor v. Twin City Club*, 260 N.C. 435, 132 S.E.2d 865 (1963)). The limiting language of the definition, requiring the injury arise out of and in the course of employment, "[keeps] the Act within the limits of its intended scope,—that of providing compensation benefits for industrial injuries, rather than branching out into the field of general health insurance benefits." *Duncan v. City of Charlotte*, 234 N.C. 86, 91, 66 S.E.2d 22, 25 (1951) (citations omitted). "Thus the injury must spring from the employment in order to be

compensable under the Act. This requirement is often called the rule of causal relation." Jernigan, *Workers' Compensation* § 5-3, at 38 (citation omitted); *see also Duncan*, 234 N.C. at 91, 66 S.E.2d at 25 (stating that "[the] rule of causal relation is the very sheet anchor of the Workmen's Compensation Act") Therefore, our analysis rests on the statutory language "arising out of and in the course of the employment." *See* N.C.G.S. § 97-2(6).

"An injury is said to arise out of the employment when it . . . is a natural and probable consequence or incident of" the employment and "a natural result of one of [its] risks," so that "there is some causal relation between the accident and the performance of some service of the employment." *Taylor*, 260 N.C. at 438, 132 S.E.2d at 868 (citations omitted). Risk of injury from a go-cart accident is not something a reasonable person would contemplate upon entering service as a volunteer EMT, as it is not a risk one would associate with the anticipated risks inherent in the job. *See Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 404, 233 S.E.2d 529, 532-33 (1977) (stating that if it can be shown that the risk was incidental to employment, so that a reasonable person familiar with the whole situation would have contemplated the risk when he entered the employment, then the injury will have arisen out of the employment). The type of injury sustained by plaintiff in the instant case could more aptly be characterized as a hazard which is equally common to the general public outside of employment as an EMT. *Roberts v. Burlington Indus., Inc.*, 321 N.C. 350, 358, 364 S.E.2d 417, 422-23 (1988); *Cole v. Guilford Cty.*, 259 N.C. 724, 727, 131 S.E.2d 308, 311 (1963); *Bryan v. T.A. Loving Co. & Assocs.*, 222 N.C. 724, 728, 24 S.E.2d 751, 754 (1943) (noting that when an injury "comes from a hazard to which the [worker] would have been equally exposed apart from the employment or from a hazard common to others, it does not arise out of the employment" and that "[t]he causative danger must be peculiar to the work and not common to the neighborhood"; that is, "[i]t must be incidental to the character of the business and not independent of the relation of" employer and employee).

The Act's application to injuries occurring during recreational and social activities related to employment is well established in the jurisprudence of North Carolina. In 1964 this Court issued its opinion in *Perry v. American Bakeries Co.*, 262 N.C. 272, 136 S.E.2d 643 (1964). *Perry* involved an employee injured while diving into a swimming pool at the hotel where the employee was attending a sales meeting. In *Perry*, the plaintiff was directed by his supervisor to

attend the sales meeting. *Id.* at 273, 136 S.E.2d at 644. The plaintiff was told to arrive at the provided accommodations and location for the sales meeting by 4:30 p.m. the day before the meeting began. *Id.* The employer held a social hour for the attending employees at 5:30 p.m. that day, which the plaintiff attended before going to dinner with a coworker. 262 N.C. at 273, 136 S.E.2d at 644-45. Upon returning to the provided accommodations after dinner, the plaintiff, along with other employees, swam in the pool maintained by the hotel for use of its guests. *Id.* at 273, 136 S.E.2d at 645. The plaintiff sustained a fractured cervical vertebra while diving. *Id.*

This Court in *Perry* stated:

Where, as a matter of good will, an employer at his own expense provides an occasion for recreation or an outing for his employees and invites them to participate, but does not require them to do so, and an employee is injured while engaged in the activities incident thereto, such injury does *not* arise out of the employment.

262 N.C. at 275, 136 S.E.2d at 646 (emphasis added) (citing *Lewis v. W.B. Lea Tobacco Co.*, 260 N.C. 410, 132 S.E.2d 877 (1963); *Berry v. Colonial Furn. Co.*, 232 N.C. 303, 306-07, 60 S.E.2d 97, 100 (1950); *Hildebrand v. McDowell Furn. Co.*, 212 N.C. 100, 112-13, 193 S.E. 294, 303 (1937)). This Court further stated: "Plaintiff's activity in swimming was not a function or duty of his employment, was not calculated to further directly or indirectly his employer's business to an appreciable degree, and was authorized only for the optional pleasure and recreation of plaintiff while off duty during his stay at the Inn." *Perry*, 262 N.C. at 275, 136 S.E.2d at 646. *Perry* is on point with our decision today as plaintiff was invited, but not required, to operate a go-cart in conjunction with a purely voluntary "Fun Day" arranged as a matter of good will by defendant. *Id.* Plaintiff was injured "while engaged in the activities incident thereto," and as illustrated by *Perry*, "such injury does not arise out of the employment." *Id.* Further, plaintiff's operation of the go-cart was not a function of her duties or responsibilities to Salter Path Fire & Rescue. Plaintiff's activities were authorized merely for her optional pleasure and recreation while she was off duty.

Consistent with this Court's holding in *Perry*, the North Carolina Court of Appeals articulated a six question analysis from Larson's treatise to aid in determination of whether an injury arose out of employment:

**FROST v. SALTER PATH FIRE & RESCUE**

[361 N.C. 181 (2007)]

(1) Did the employer in fact sponsor the event?

(2) To what extent was attendance really voluntary?

(3) Was there some degree of encouragement to attend evidenced by such factors as:

    a. taking a record of attendance;

    b. paying for the time spent;

    c. requiring the employee to work if he did not attend; or

    d. maintaining a known custom of attending?

(4) Did the employer finance the occasion to a substantial extent?

(5) Did the employees regard it as an employment benefit to which they were entitled as of right?

(6) Did the employer benefit from the event, not merely in a vague way through better morale and good will, but through such tangible advantages as having an opportunity to make speeches and awards?

*Chilton v. Bowman Gray Sch. of Med.*, 45 N.C. App. 13, 15, 262 S.E.2d 347, 348 (1980) (citing 1A Larson, Workmen's Compensation Law § 22.23, p. 5-85, currently 2 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 22.04[3], at 22-23 (2006)). We are not unmindful that *Chilton* has provided a helpful mode of analysis for the Court of Appeals, the Industrial Commission, and the practitioner for the last twenty-seven years. However, while the *Chilton* factors may serve as helpful guideposts in this inquiry, this Court has never recognized these factors as controlling and we decline to do so here, as a review of this Court's precedent in *Perry* makes the disposition of this case clear.

    *Rice v. Uwharrie Council Boy Scouts of America* is distinguishable from the case *sub judice.* 263 N.C. 204, 139 S.E.2d 223 (1964). The plaintiff in *Rice* was employed by the defendant as a District Scout Executive and was one of four executives of the Uwharrie Council directed to attend a Scouting Executive Conference as a training course for professional scouting. *Id.* at 205, 207, 139 S.E.2d at 224-25, 226. In that case, the evidence and findings of the Industrial Commission "permitted the inference [that] the employer impliedly required participation in" the injurious activity, namely a fishing trip, not merely to amuse and entertain the employee, but to aid his

advancement and make him better qualified to carry on his work in scouting. *Id.* at 208, 139 S.E.2d at 227. This Court noted that "under such circumstances injuries suffered by employees in recreational activities are compensable." *Id.* (citation omitted). Unlike *Rice*, plaintiff's participation was not required in the case *sub judice*. Plaintiff was invited to attend the event, but in no way was she required to do so. *Rice* is further distinguishable, as the plaintiff in that case was engaged in activities of the sort one would normally expect of the youth program, Boys Scouts of America, which emphasizes outdoor activities. Defendant Salter Path Fire & Rescue is not a social organization, and one would not normally associate involvement in amusement park type recreational activities with the duties and functions inherent in the work required of an EMT. Plaintiff attended the "Fun Day" of her own will and for her own personal benefit and pleasure. Therefore, we hold that an employee who, on a purely voluntary basis, attends a "Fun Day" and is injured while participating therein, cannot be said to have suffered a compensable injury which arises out of and in the course of the employment. Thus defendant is not responsible under the Act for the non-compensable injuries plaintiff suffered during her participation.

For the reasons discussed above, the Industrial Commission's findings of fact do not support its conclusion of law that plaintiff suffered an injury by accident arising out of her employment. Based on the clear language of the Workers' Compensation Act and this Court's prior decisions, we hold plaintiff's injury was not compensable as it did not arise out of her employment. We therefore reverse the decision of the Court of Appeals and remand this case to that court for further remand to the Industrial Commission for proceedings not inconsistent with this opinion. As to the issue presented in defendants' petition for discretionary review, we conclude that discretionary review was improvidently allowed.

REVERSED AND REMANDED; DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED.

Justice HUDSON did not participate in the consideration or decision of this case.

Justice TIMMONS-GOODSON dissenting.

Because I believe the record sustains the findings of fact made by the Industrial Commission, and because I believe those findings

of fact support the Commission's conclusions of law, I respectfully dissent.

Appellate courts' review of a decision by the Industrial Commission is limited to examining "whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). This Court's duty " 'goes no further than to determine whether the record contains any evidence tending to support the [Industrial Commission's] finding.' " *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)). Further, "[t]he evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." *Id.* In other words, evidence that might lead another finder of fact to make a different decision is irrelevant unless the Commission's findings are absolutely unsupported by any evidence in the record.

While the majority articulates the appropriate standard of review, it fails to follow it. Not only does the majority fail to give deference to the findings of fact as instructed by this Court's precedent, the majority makes little mention of the Commission's findings of fact.

The issue before us is whether the Commission's findings of fact are supported by any competent evidence in the record and whether those findings support the Commission's conclusions of law. The Industrial Commission concluded that plaintiff's injury arose out of and in the course of her employment with Salter Path Fire & Rescue ("Salter Path") and was therefore compensable. In my opinion, there was sufficient evidence in the record to support the findings of fact and to sustain the Commission's conclusions of law.

The Industrial Commission entered the following findings of fact pertinent to our inquiry:

2. Plaintiff was injured at the Salter Path Fire and Rescue Fun Day on September 30, 2001. Fun Day was essentially an appreciation day, in which the community thanked volunteer firemen and rescue workers for their contribution and work in the community. The purpose for Fun Day was to boost the morale and goodwill of Salter Path volunteers, show appreciation for the

unpaid volunteers of Salter Path, and to help develop cama-
raderie among the volunteers. Fun Day was initiated in 2000.

3. The Fun Day event was put on by Salter Path Fire and
Rescue Corporation and was paid for out of a Special Donations
Fund, rather than out of the Department's operating budget.
Salter Path Fire and Rescue Corporation paid for the admission
of the volunteers and their families to Lost Treasures Golf and
Raceway ("Lost Treasures"), the private amusement park where
Fun Day was held, and provided lunch to the participants while
at Fun Day.

4. Fun Day was a voluntary event, but Salter Path volunteers
and their families were urged to attend if possible. Many volun-
teers did not attend. Those in attendance signed in at the
Treasure Island main window and were given passes for free
rides and a free lunch. One purpose of this sign-in sheet was to
allow Treasure Island to compute the total cost, according to the
discount ticket rates provided. Another possible purpose was to
give management of the fire and rescue unit an attendance log.
Notwithstanding that attendance was voluntary, Salter Path did
keep attendance for the event. The employer received a tangible
benefit from this event in that it helped to improve morale of vol-
unteers and it provided an opportunity for leaders of the fire and
rescue unit to encourage volunteers to continue their participa-
tion as volunteers. The volunteers viewed Fun Day as a benefit of
their voluntary employment. The Chief of Salter Path, Ritchie
Frost, told plaintiff that he wanted her to attend Fun Day.

5. On the morning of September 30, 2001, plaintiff called
Carteret County Communications ("Communications") to tell the
dispatcher to set the tones for noon for all of the volunteers'
beepers to remind them of Fun Day. Plaintiff and her husband
then took the Salter Path Fire & Rescue ambulance to Treasure
Island and proceeded inside to ride the go-carts. Plaintiff had
signed in as "on duty" prior to her injury and had intended to give
a pep speech thanking the EMS volunteers and encouraging their
continued participation with Salter Path just as she had done at
the previous Fun Day.

The majority contends that no competent evidence supports the
Commission's findings of fact. As the Court of Appeals noted with
regard to finding 3, however, "three witnesses testified without ob-
jection that Salter Path did sponsor the event and defendants do not

dispute that the volunteers' admission to the event was paid for by Salter Path's special contribution fund." —— N.C. App. ——, ——, 628 S.E.2d 22, 25 (2006). Competent evidence also supports finding 4. Specifically, volunteers who attended Fun Day signed in at the entrance to Lost Treasures. Further, it is undisputed that the Chief of Salter Path told plaintiff he wanted her to attend the event. Testimony also indicated that Salter Path benefitted from the event because the event encouraged volunteers' continued participation. Thus, the Commission appropriately found that improving morale in a volunteer organization amounts to a tangible benefit. With regard to finding 5, plaintiff testified that she signed in as "on duty" the morning of Fun Day when she picked up the ambulance to drive it to Lost Treasures. In addition, she testified that she planned to give a pep talk to the volunteers at Fun Day. In light of the record, I would hold that the Commission's findings are supported by competent evidence.

The next step of our inquiry is whether the Commission's findings of fact support its conclusions of law. The Commission based its conclusions of law on the test set out in *Chilton v. Bowman Gray School of Medicine*, 45 N.C. App. 13, 15, 262 S.E.2d 347, 348 (1980), for whether an injury sustained at an employer-sponsored recreational event or social activity arose out of and in the course of employment. The majority declines to adopt *Chilton*, but does recognize that it is consistent with this Court's holding in *Perry v. American Bakeries Co.*, 262 N.C. 272, 275, 136 S.E.2d 643, 646 (1964). I agree. In the instant case, the Commission concluded that "the evidence in the instant cause establishes affirmative answers to at least four of the six *Chilton* questions, and, arguably, all six." Therefore, the Commission concluded that "[p]laintiff suffered an injury by accident on September 30, 2001, arising out of . . . employment with the defendant-employer." I agree that the *Chilton* factors support plaintiff's position.

The majority bases its analysis on *Perry v. American Bakeries Co.*, 262 N.C. 272, 275, 136 S.E.2d 643, 646 (1964), in which this Court held that an employee's injury that occurred while swimming during free time at an employer-sponsored sales meeting did not arise out of his employment. The plaintiff in *Perry* was a route salesman supervisor for American Bakeries in Raleigh. *Id.* at 272, 136 S.E.2d at 644. At the time of the accident, he was attending a sales meeting in Greensboro. *Id.* at 273, 136 S.E.2d at 644-45. The plaintiff stayed overnight at an inn, and his lodging was paid for by his employer. *Id.*

at 273, 136 S.E.2d at 644. He arrived in Greensboro the day before the meeting began and attended a social hour hosted by his employer. *Id.* After the social hour ended, the plaintiff went to dinner with a coworker, then returned to his hotel and decided to swim in the hotel pool. *Id.* at 273, 136 S.E.2d at 645. At that time, the plaintiff sustained a diving injury. *Id.* As a result of his injury, he remained in the hospital for sixty-five days and was out of work for five months. *Id.* His employer paid the plaintiff's salary during those five months. *Id.*

The majority distinguishes *Rice v. Uwharrie Council Boy Scouts of America,* 263 N.C. 204, 207-08, 139 S.E.2d 223, 226-27 (1964), in which this Court affirmed the Industrial Commission's finding that an injury sustained by an employee while deep-sea fishing at an employer-sponsored conference arose out of his employment. The plaintiff in *Rice* was a District Scout Executive from Lexington, North Carolina. *Id.* at 205, 139 S.E.2d at 224. At the time of his injury, he was attending a five-day Scouting Executive Conference at Jekyll Island, Georgia, at his employer's expense. *Id.* at 205, 139 S.E.2d at 225. The plaintiff fractured his leg during a deep-sea fishing outing, and the evidence before the Commission indicated that such recreational activities were " 'a planned part of the program.' " *Id.* at 207, 139 S.E.2d at 226. The plaintiff was out of work for more than five months and was paid his regular salary during that time. *Id.* at 205, 139 S.E.2d at 224.

Based on the Commission's findings of fact, I find the instant case to be more comparable to *Rice* than to *Perry.* In *Rice,* this Court found that "[t]he evidence and findings permit the inference the employer impliedly required participation in the scheduled activities, . . . not merely for the purpose of furnishing amusement and entertainment for the employee." *Id.* at 208, 139 S.E.2d at 227. Similarly, here, the Commission's findings permit the inference that the event was not wholly voluntary and that the event benefitted Salter Path in a tangible way. I refer specifically to the Commission's findings that plaintiff was told by the Chief of Salter Path that he wanted her to attend Fun Day and that the event benefitted Salter Path in terms of volunteer retention. Moreover, *Perry* can be distinguished from the instant case in the same way this Court in *Rice* distinguished it. In *Rice,* the Court recited the facts of *Perry* as follows: "Mr. Perry entered the swimming pool *entirely on his own after the social hour provided by his employer was over.*" *Id.* (emphasis added). Here, however, plaintiff was injured while engaging in activities at the very event her employer asked her to attend.

Because the Commission's findings of fact are supported by some credible evidence in the record and because those findings support the Commission's conclusions of law, I would affirm the Court of Appeals. Therefore, I respectfully dissent.