EDITH L. JOHNSON, Widow and Sole Dependent of RUSSELL L. JOHNSON, Deceased Employee, Plaintiff v. COVIL CORPORATION, Employer, ST. PAUL TRAVEL-ERS/USF&G and/or S.C. PROPERTY & CASUALTY INSURANCE GUARANTY ASSOCIATION and/or NORTHERN INSURANCE CO. OF NEW YORK and/or PENN NATIONAL INSURANCE CO. and/or TRAVELERS CASUALTY & SURETY/AETNA CASUALTY, Carriers, Defendants

No. COA10-1440

(Filed 7 June 2011)

**Workers' Compensation— death benefits—method and calculation**

The Industrial Commission erred in a workers' compensation case by the method and calculation used to determine plaintiff's death benefits. The case was remanded for more specific findings as to why the first method of N.C.G.S. § 97-2(5) would be unjust and to recalculate plaintiff's compensation.

Appeal by plaintiff from opinion and award entered 26 May 2010 by the North Carolina Industrial Commission. Heard in the Court of Appeals 27 April 2011.

*Wallace and Graham, P.A., by Edward L. Pauley, for plaintiff appellant.*

*Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Mathew E. Flatow and M. Duane Jones, for defendant appellees.*

McCULLOUGH, Judge.

Edith L. Johnson, dependent and representative of the Estate of Russell Lee Johnson, ("plaintiff") appeals from the Full Commission's denial of her Motion to Amend or Reconsider the Opinion and Award dated 26 May 2010. For the reasons discussed herein, we agree with plaintiff in part, reverse, and remand.

### I. Background

Russell Lee Johnson ("decedent") worked for Covil Corporation ("Covil") in various capacities from 1957 to 1987. Covil was an insulation company that used asbestos on many of its sites. Decedent began his career as an insulator, installing and removing asbestos insulation, and gradually moved up from foreman to President of Covil. In 1987, decedent retired from Covil and in 1989 he served as Chief Executive Officer ("CEO") of an insulation company started by his son-in-law. As CEO of his son-in-law's company, he served as a figurehead without receiving any compensation.

In late 2005, decedent began experiencing abdominal pain. The following February he was diagnosed with cancer of the peritoneum membrane, which forms the lining of the abdominal cavity. Biopsies were taken, indicating that it was peritoneal mesothelioma, a rare cancer only caused by asbestos. The biopsies also established that decedent had extensive pleural plaquing and fibrotic scarring on his lungs, related to the asbestos exposure. On 5 June 2006, decedent filed a claim for benefits with the Industrial Commission based on asbestos exposure, pleural disease, and mesothelioma. Decedent suddenly died the next day as a result of mesothelioma, lung fibrosis, and septic shock.

On 3 October 2006, plaintiff filed an amended form with the Industrial Commission seeking death benefits. The Commission determined that decedent's death was the result of his occupational exposure to asbestos and awarded benefits to plaintiff. The Commission found that decedent had average weekly wages of $807.69 in 1987, his last full year of employment. Based on the use of 1987 in determining his average weekly wages, the Commission used the maximum compensation rate for 1987 of $308.00 to award plaintiff 400 weeks of death benefits at $308.00 per week. Plaintiff filed a Motion to Amend or Reconsider the Order based on the maximum compensation rate of $308.00. The Commission denied the Motion and plaintiff appeals.

II. Analysis

Plaintiff contends that the Full Commission erred in its method and calculation of determining plaintiff's death benefits by using the maximum compensation rate for 1987. Upon review of the relevant statutes, we agree. Plaintiff raises multiple, similar issues regarding the Commission's selection of the proper maximum compensation rate. We will address these issues together in our discussion of the overlying issue.

Generally, appellate review of an opinion and award from the Industrial Commission is limited to: "(i) whether the findings of fact are supported by competent evidence, and (ii) whether the conclusions of law are justified by the findings of fact." *Chambers v. Transit Mgmt.*, 360 N.C. 609, 611, 636 S.E.2d 553, 555 (2006). To aid this Court in performing its duty of "determining whether the Commission's legal conclusions are justified, the Commission must support its conclusions with sufficient findings of fact." *Gregory v. W.A. Brown & Sons*, 363 N.C. 750, 761, 688 S.E.2d 431, 439 (2010). "Findings not sup-

JOHNSON v. COVIL CORP.

[212 N.C. App. 407 (2011)]

ported by competent evidence are not conclusive and will be set aside on appeal." *Penland v. Bird Coal Co.*, 246 N.C. 26, 30, 97 S.E.2d 432, 436 (1957). But findings supported by competent evidence are conclusive, "even when there is evidence to support contrary findings." *Pittman v. International Paper Co.*, 132 N.C. App. 151, 156, 510 S.E.2d 705, 709, *aff'd*, 351 N.C. 42, 519 S.E.2d 524 (1999). "The Commission's conclusions of law are reviewed *de novo*." *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004) (citation omitted).

In its 26 May 2010 opinion and award, the Full Commission found in Finding of Fact 28:

> 28. Decedent-Employee's last full year of employment with Defendant-Employer was 1986, when he earned $42,000.00. He had an average weekly wage of $807.69 during 1987. That average weekly wage results in the maximum compensation rate which was in effect in 1987 of $308.00. When Decedent-Employee worked for Insulation Services, a company started by his son-in-law Mr. Coggins, on a full-time basis between 1989 and approximately February 24, 2006, he was not compensated for the work that he performed. Use of the maximum compensation rate in effect for the last year Decedent-Employee worked for Defendant-Employer is a fair and just method of determining the compensation rate in this case.

The Commission went on to hold in Conclusion of Law 8:

> 8. Basing Decedent-Employee's compensation rate on his average weekly wage when he was last employed by Defendant-Employer produces a fair and just result in the instant case. Decedent-Employee's compensation rate is $308.00, the maximum compensation rate for 1987, the year Plaintiff retired. N.C. Gen. Stat. § 97-2(5).

To discuss the issue of the proper method to determine the maximum compensation rate, some background information on workers' compensation benefits is necessary. A widow is entitled to 400 weeks of compensation and burial expenses where death results proximately from an occupational disease as explained under N.C. Gen. Stat. § 97-38 (2009), which states:

> If death results proximately from a compensable injury or occupational disease and within six years thereafter, or within two years of the final determination of disability, whichever is

later, the employer shall pay or cause to be paid, subject to the provisions of other sections of this Article, weekly payments of compensation equal to sixty-six and two-thirds percent (66 ⅔%) of the average weekly wages of the deceased employee at the time of the accident, but not more than the amount established annually to be effective October 1 as provided in G.S. 97-29, nor less than thirty dollars ($30.00), per week, and burial expenses not exceeding three thousand five hundred dollars ($3,500)[.]

Here, the Commission correctly determined that decedent died as a result of an occupational disease, mesothelioma, and awarded plaintiff $3,500.00 for burial expenses. The Commission also found that decedent's average weekly wages were $807.69 and that plaintiff was entitled to 400 weeks of compensation. In determining average weekly wages the Commission looks to the first and final methods of N.C. Gen. Stat. § 97-2(5) (2009), which state in relevant parts:

(5) Average Weekly Wages.—"Average weekly wages" shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury . . . .

But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

Section 97-2(5) " 'provides a hierarchy' of five methods for computing average weekly wages." *Abernathy v. Sandoz Chems./Clariant Corp.*, 151 N.C. App. 252, 258, 565 S.E.2d 218, 222 (2002) (quoting *McAninch v. Buncombe County Schools*, 347 N.C. 126, 130, 489 S.E.2d 375, 378 (1997)). Although we agree with the Commission's determination of the average weekly wages, the Supreme Court has determined:

The final method, as set forth in the last sentence, *clearly may not be used unless there has been a finding that unjust results would occur by using the previously enumerated methods.* Ultimately, the primary intent of this statute is that results are reached which are fair and just to both parties. "Ordinarily, whether such results will be obtained . . . is a question of fact; and in such case a finding of fact by the Commission controls decision."

*McAninch*, 347 N.C. at 130, 489 S.E.2d at 378 (citations omitted) (emphasis added).

It can be inferred from the Commission's decision of the average weekly wages using decedent's 1987 wages that, using decedent's weekly wages from 2006, his last year of employment, according to the first method of N.C. Gen. Stat. § 97-2(5), would produce an unjust result. In 2006 decedent had been retired from defendant's employment for a number of years and was merely acting as a figurehead for his son-in-law's company. We agree that if the Commission used the first method of section 97-2(5) the decedent's average weekly wages would be zero, as decedent did not earn any wages in the period of 52 weeks prior to the date of his diagnosis in 2006. This falls below the $30.00 threshold as set in section 97-38. *See* N.C. Gen. Stat. § 97-38. Therefore, to have a just and fair result the Commission resorted to using decedent's average weekly wages from his last year of employment with defendant. *See Abernathy*, 151 N.C. App. at 258, 565 S.E.2d at 222. The Commission made the correct determination, but failed to explain why the first method would produce unjust results. *See Pope v. Johns Manville*, —— N.C. App. ——, ——, 700 S.E.2d 22, 29-30, *disc. review denied*, —— N.C. App. ——, 705 S.E.2d 375 (2010). In so doing the Commission erred, and we remand for a more explicit finding as to why the use of the first method would be unjust.

A major role of our appellate courts is statutory interpretation and our Supreme Court has held that when construing a statute, " 'our primary task is to ensure that the purpose of the legislature, the legislative intent, is accomplished.' " *State v. Rawls*, —— N.C. App. ——, ——, 700 S.E.2d 112, 115 (2010) (quoting *Elec. Supply Co. of Durham, Inc. v. Swain Elec. Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991)). In performing this function, " '[l]egislative purpose is first ascertained from the plain words of the statute.' " *Id.* If the words of the statute are unambiguous, we are to give them the plain and ordinary meaning; however, if they are ambiguous, judicial interpretation must be used to ascertain the legislative intent. *Id.* at ——, 700 S.E.2d at 115. In the case at hand, we review the Commission's determination of the appropriate maximum compensation rate *de novo*. *McRae*, 358 N.C. at 496, 597 S.E.2d at 701.

To determine the compensation rates for total incapacity and the maximum compensation rate, we look to N.C. Gen. Stat. § 97-29 (2009), which in pertinent part provides:

Except as hereinafter otherwise provided, where the incapacity for work resulting from the injury is total, the employer shall pay or cause to be paid, as hereinafter provided, to the injured employee during such total disability a weekly compensation equal to sixty-six and two-thirds percent (66 ⅔%) of his average weekly wages, but not more than the amount established annually to be effective October 1 as provided herein, nor less than thirty dollars ($30.00) per week.

. . . If death results from the injury then the employer shall pay compensation in accordance with the provisions of G.S. 97-38.

*Notwithstanding any other provision of this Article,* on July 1 of each year, a maximum weekly benefit amount shall be computed . . . and *this said maximum weekly benefit shall be applicable to all injuries and claims arising on and after January 1 following such computation.* Such maximum weekly benefit shall apply to all provisions of this Chapter and shall be adjusted July 1 and effective January 1 of each year as herein provided.

(Emphasis added.)

In its findings and conclusions, the Commission figured that decedent had average weekly wages of $807.69 based on his 1987 wages and consequently concluded that the maximum compensation rate of $308.00 for 1987 should apply. We believe the Commission erred in this determination.

As the clear language of section 97-29 provides, the maximum compensation rate for a given year shall apply to all injuries and claims arising on or after 1 January following the computation of that year's compensation rate. *See id.* In cases involving occupational diseases, the claim arises when the disease is diagnosed. *Abernathy,* 151 N.C. App. at 257, 565 S.E.2d at 221. Here, decedent's asbestosis and mesothelioma were diagnosed in 2006, which corresponds with the 2006 maximum compensation rate of $730.00. Although the proper year for determining decedent's average weekly wages is 1987, N.C. Gen. Stat. § 97-29 does not provide an unjust result, but requires that the maximum compensation rate for 2006 be used, as that was the year of decedent's diagnosis.

The last issue that we would like to address is the Commission's use of decedent's average weekly wages. The Commission correctly determined that decedent's average weekly wages for 1987 were $807.69 based on section 97-2(5), but the Commission erred by failing

to apply the average weekly wages in conjunction with section 97-38. " '[I]n discerning the intent of the General Assembly, statutes *in pari materia* should be construed together and harmonized whenever possible.' " *State v. Abshire*, 363 N.C. 322, 330, 677 S.E.2d 444, 450 (2009) (quoting *State v. Jones*, 359 N.C. 832, 836, 616 S.E.2d 496, 498 (2005)).

As stated above, N.C. Gen. Stat. § 97-38 provides the guidelines for compensation where death results from an occupational disease. The statute states that the employer shall pay compensation equal to sixty-six and two-thirds (66 ⅔ %)of the average weekly wages of decedent, but not more than the maximum compensation rate as provided in N.C. Gen. Stat. § 97-29. The Commission failed to apply the 66 ⅔% aspect of the statute to the average weekly wages of $807.69. Upon applying the 66 ⅔%, the compensation becomes $538.41. Because $538.41 is below the maximum compensation rate of $730.00 for 2006, plaintiff is entitled to the full amount of $538.41 for 400 weeks.

### III. Conclusion

Based on the foregoing reasons, we remand the case to the Industrial Commission for more specific findings as to why the first method of section 97-2(5) would be unjust and to recalculate plaintiff's compensation in accordance with this opinion.

Reversed and remanded.

Judges HUNTER (Robert C.) and BRYANT concur.