IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-595

No. COA21-804

Filed 6 September 2022

North Carolina Industrial Commission, I.C. No. 19-034789

CLARENCE RICHARDS, Employee, Plaintiff,

v.

HARRIS TEETER, INC., Employer, SELF-INSURED (SEDGWICK CLAIMS MANAGEMENT SERVICES, Third-Party Administrator), Defendants.

Appeal by defendants from opinion and award entered 26 August 2021 by the North Carolina Industrial Commission. Heard in the Court of Appeals 10 August 2022.

*Hunter & Everage, by S. Camille Payton, for plaintiff-appellee.*

*Pope Aylward Sweeney & Santaniello, LLP, by Alexander J. Elmes and Edward A. Sweeney, for defendants-appellants.*

ZACHARY, Judge.

¶ 1    Defendants Harris Teeter, Inc., ("Defendant") and Sedgwick Claims Management Services (collectively, "Defendants") appeal from an Opinion and Award entered by the North Carolina Industrial Commission in which the Full Commission concluded that the *Seagraves* test did not apply in this case. After careful review, we affirm.

## I.    Background

¶ 2    Plaintiff Clarence Richards began working as a truck driver for Defendant in

2016. On 3 August 2019, Plaintiff was injured in a single-vehicle accident on Interstate 85 when his truck "ran off the road returning from Virginia." Vance County EMS transported Plaintiff to Maria Parham Health's emergency department. The EMS record reports that Plaintiff "said he didn't know he was listening to the radio and then the accident . . . says he may have just drifted thinking about something." The hospital record states that Plaintiff "lost control of his vehicle this morning just after taking a sip of Gatorade and wound up wrecking into a grassy field."

¶ 3    Plaintiff's physician wrote Plaintiff out of work while he received medical treatment. On 13 August 2019, Plaintiff filed a Form 18 Notice of Accident to Employer and Claim of Employee, Representative, or Dependent with the Industrial Commission. On 30 August 2019, Defendants filed a Form 63 Notice of Payment of Compensation Without Prejudice, accepting Plaintiff's claim for workers' compensation benefits for a "low back" injury as a result of the 3 August accident. Defendants began paying indemnity benefits and medical compensation to Plaintiff, and did not contest the compensability of Plaintiff's claim within the statutory deadline, thereby accepting the compensability of his "low back" injury. *See* N.C. Gen. Stat. § 97-18(d) (2021).

¶ 4    Shortly after the accident, Defendant terminated Plaintiff's employment, effective 29 August 2019. Brian Barnhardt, a workers' compensation claims manager for Defendant, testified before the Deputy Commissioner that Defendant's "review

committee" determined that Plaintiff's "accident was preventable." Defendant's personnel records indicate that Plaintiff was terminated for a "Violation of Established Safety Procedures"—namely, that Defendant's camera in the cab of the truck showed that Plaintiff closed his eyes for approximately seven to ten seconds, which led to the single-vehicle accident—and that therefore Plaintiff was "Not Eligible for Rehire."

¶ 5    Barnhardt also testified regarding Defendant's "mandatory return-to-work program for a workers' comp injury[,]" and the availability of "numerous temporary positions an associate can do if they have restrictions." However, Barnhart testified that because Plaintiff was "not eligible for rehire[,]" Defendant would not offer Plaintiff any job, including positions "that [Defendant] claim[ed] [Plaintiff] could do." Defendant also declined to provide "any vocational rehabilitative services to assist Plaintiff in locating suitable employment."

¶ 6    Meanwhile, Plaintiff was released to return to "sedentary work only" on 15 August 2019, but he was prohibited from driving a truck professionally "due to functional limitations." From 23 September 2019 through 3 February 2020, Plaintiff received treatment for his lower back and right knee from Dr. Ronald Gioffre, a board-certified orthopedic surgeon. Plaintiff also attended physical therapy, which Dr. Gioffre reported "seem[ed] to be helping greatly[,]" although Dr. Gioffre noted that Plaintiff "still cannot stand more than thirty minutes and sit about 1 hour, before he

starts to have pain."

¶ 7 Later, in his deposition, Dr. Gioffre elaborated on his decision regarding Plaintiff's work restrictions:

> So I basically didn't feel in the few times that I saw him that even if he had a job that I would have let him go back to work with his back and hip, because I couldn't see how he could possibly get up – step up into one of those trucks with the hip the way it was, and his back was an issue.
>
> . . . .
>
> I know what he had to do as a truck driver, and I said, No, you can't go back to work. I didn't know what else they wanted me to do with restrictions. If they would have had a sedentary type job, I'd have sent him back. There was no reason he couldn't do sedentary work.

When presented with Defendant's job descriptions for two positions—Cashier and Self-Checkout Cashier (also referred to as a "U-Scan Cashier")—Dr. Gioffre testified that he thought Plaintiff would "have a hard time all day doing [the Cashier] work eight hours a day"; nonetheless, it was his opinion that Plaintiff would be able to perform the work of a U-Scan Cashier if he were permitted to sit periodically.

¶ 8 After being released from Dr. Gioffre's care on 3 February 2020, Plaintiff sought employment through various job search websites, across various industries. Plaintiff testified before the Deputy Commissioner that he looked for jobs that do not require constant sitting or standing, consistent with his restrictions, but that he had not received any replies from prospective employers. With regard to his resume,

Plaintiff testified that he was 64 years old at the time of the hearing before the Deputy Commissioner, with three years of college education. He was employed for 12 years as a corrections officer, and for 27 years as a truck driver; he has never worked in an office and is "computer illiterate."

¶ 9    On 30 April 2020, Plaintiff's counsel filed a Form 33 Request that Claim be Assigned for Hearing, alleging that "Defendants have failed and refused to pay past due [temporary total disability] benefit underpayment." On 15 June 2020, Defendants filed a Form 33R Response to Request that Claim be Assigned for Hearing, replying, *inter alia*, that "Plaintiff has received all benefits to which he is entitled." The matter came on for hearing before the Deputy Commissioner on 8 July 2020, and by Opinion and Award entered 12 January 2021, the Deputy Commissioner ordered that Defendants pay temporary total disability "until Plaintiff returns to work, until further order of the Industrial Commission, or until compensation is otherwise legally terminated."

¶ 10    Defendants timely filed notice of appeal to the Full Commission of the North Carolina Industrial Commission, which heard this matter on 9 June 2021. By Opinion and Award entered 26 August 2021, the Full Commission awarded Plaintiff the same payment of temporary total disability and attorneys' fees, and added that "[s]ubject to the provisions of N.C. Gen. Stat. § 97-25.1, Defendant shall pay medical expenses incurred or to be incurred as a result of Plaintiff's admittedly compensable injury as

may reasonably be required to effect a cure, provide relief, or lessen the period of disability."

¶ 11    Defendants timely filed notice of appeal to this Court.

## II.    Discussion

¶ 12    On appeal, Defendants first argue that the Full Commission erred by failing to find that Plaintiff constructively refused suitable employment, and by failing to apply the test for constructive refusal of suitable employment first articulated by this Court in *Seagraves v. Austin Co. of Greensboro*, 123 N.C. App. 228, 472 S.E.2d 399 (1996), and subsequently adopted by our Supreme Court in *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 597 S.E.2d 695 (2004). Assuming application of the *Seagraves* test, Defendants also argue that the Full Commission erred by failing to find that Defendants had not shown that Plaintiff's termination was unrelated to his compensable injury, and by concluding that Plaintiff remains disabled or that he conducted a reasonable job search.

### A.  Standard of Review

¶ 13    "Appellate review of an award from the Industrial Commission is generally limited to two issues: (i) whether the findings of fact are supported by competent evidence, and (ii) whether the conclusions of law are justified by the findings of fact." *Chambers v. Transit Mgmt.*, 360 N.C. 609, 611, 636 S.E.2d 553, 555 (2006), *reh'g denied*, 361 N.C. 227, 641 S.E.2d 801 (2007). Because the Commission "is the sole

judge of the weight and credibility of the evidence," its "findings of fact are conclusive on appeal if supported by competent evidence[.]" *Blackwell v. N.C. Dep't of Pub. Instruction*, 2022-NCCOA-123, ¶ 5 (citations omitted).

¶ 14        "Findings not supported by competent evidence are not conclusive and will be set aside on appeal. But findings supported by competent evidence are conclusive, even when there is evidence to support contrary findings." *Johnson v. Covil Corp.*, 212 N.C. App. 407, 408–09, 711 S.E.2d 500, 502 (2011) (citations and internal quotation marks omitted). "Unchallenged findings of fact are presumed to be supported by competent evidence and are binding on appeal." *Fields v. H&E Equip. Servs., LLC*, 240 N.C. App. 483, 485–86, 771 S.E.2d 791, 793–94 (2015) (citation omitted).

¶ 15        The Commission's conclusions of law are reviewed de novo. *Blackwell*, 2022-NCCOA-123, ¶ 5. Under de novo review, this Court "considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Fields*, 240 N.C. App. at 486, 771 S.E.2d at 793–94 (citation omitted).

**B. Constructive Refusal of Suitable Employment**

¶ 16        The parties stipulated that "Plaintiff was injured during the scope of his employment" with Defendant. The initial compensability of Plaintiff's lower back injury resulting from the accident is also undisputed. Rather, this appeal concerns whether Plaintiff constructively refused suitable employment where Defendant

deemed him ineligible for participation in Defendant's "return-to-work" program.

¶ 17　　　　Before the Full Commission, Defendants argued that "Plaintiff constructively refused suitable employment because he was terminated for cause, and that but for the termination for cause, Plaintiff would have remained employed at his preinjury wages because Defendant would have accommodated Plaintiff's post-injury restrictions." On appeal, Defendants argue that the Full Commission erred by failing to extend the *Seagraves* test for constructive refusal of suitable employment. We disagree.

¶ 18　　　　Under our Workers' Compensation Act, "[i]f an injured employee refuses suitable employment as defined by G.S. 97-2(22), the employee shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission such refusal was justified." N.C. Gen. Stat. § 97-32. "In *Seagraves*, the Court of Appeals examined the question of whether an employee can be deemed to have refused suitable employment, thereby precluding injury-related benefits, if she is terminated for misconduct that is unrelated to her workplace injuries." *McRae*, 358 N.C. at 493, 597 S.E.2d at 698.

> In lieu of an employee's termination for misconduct serving as an automatic bar to benefits, the court in *Seagraves* adopted a test that measures whether the employee's loss of earning capacity is attributable to the wrongful act that caused the employee's termination from employment, in which case benefits would be barred, or whether such loss of earning capacity is due to the employee's work-related

> disability, in which case the employee would be entitled to benefits intended for such disability.

*Id.* at 493, 597 S.E.2d at 699.

¶ 19 The *McRae* Court adopted the *Seagraves* test: "to bar payment of benefits, an employer must demonstrate initially that: (1) the employee was terminated for misconduct; (2) the same misconduct would have resulted in the termination of a nondisabled employee; and (3) the termination was unrelated to the employee's compensable injury." *Id.* "An employer's successful demonstration of such evidence is deemed to constitute a constructive refusal by the employee to perform suitable work . . . ." *Id.* at 493, 597 S.E.2d at 699 (citation and internal quotation marks omitted). The employee's constructive refusal "would bar benefits for lost earnings, *unless* the employee is then able to show that his or her inability to find or hold other employment at a wage comparable to that earned prior to the injury is due to the work-related disability." *Id.* at 493–94, 597 S.E.2d at 699 (citation and internal quotation marks omitted).

¶ 20 Further, our Supreme Court reiterated that, under the *Seagraves* test, the employer bears the burden "to show, by the greater weight of the evidence, that a plaintiff's termination was unrelated to his or her work-related injuries; the burden is not on a plaintiff to show that the termination was so related." *Id.* at 499, 597 S.E.2d at 702.

¶ 21        Importantly for the present case, the Full Commission noted in its Opinion and Award that the injured employee in *Seagraves* "had been provided light-duty, rehabilitative employment after contracting a compensable occupational disease[,]" *see Seagraves*, 123 N.C. App. at 229, 472 S.E.2d at 398, while the injured employee in *McRae* "was terminated for inadvertent errors she committed while performing a job to which she was reassigned subsequent to undergoing surgery for a compensable occupational disease[,]" *see McRae*, 358 N.C. at 491, 597 S.E.2d at 697–98. That the injured employees in *Seagraves* and *McRae* were terminated from rehabilitative employment was a significant factor to the Full Commission, which observed that Plaintiff "was not terminated from rehabilitative employment for misconduct unrelated to his admittedly compensable injury. Rather, Plaintiff in this case was terminated from his regular job for his role in the very accident that caused his admittedly compensable injury." Accordingly, the Full Commission concluded that "[t]he operative facts in the case before us are substantially different than those in *Seagraves* and *McRae*" and therefore, "[g]iven these fundamental factual differences, the *Seagraves* test is not applicable in this case."

¶ 22        Defendants argue that the Full Commission erred by distinguishing the case at bar from *Seagraves* and *McRae* on the basis of those injured employees' termination from rehabilitative employment, asserting that "[i]t is unclear why the Commission believes the temporal factor is required in the analysis of earning

capacity and disability." Instead, Defendants contend that "[t]he fact that . . . Plaintiff's misconduct resulted in his termination for cause deprived . . . Defendant the opportunity to return him to suitable employment[.]" According to Defendant, it "has a job for . . . Plaintiff but for the fact he was terminated for unsafe driving when he fell asleep and drove his truck off the road[,]" an undisputed violation of Defendant's established safety protocols. Because it "has a job approved by the authorized treating physician which would have been available to . . . Plaintiff, but for his termination, the fact that termination did not occur during rehabilitative employment appears irrelevant." We cannot agree.

¶ 23    In seeking to apply the *Seagraves* test to cases such as this—in which the injured employee was terminated for causing the accident that resulted in his injury and so, pursuant to the employer's policies, has not and avowedly will not be offered suitable employment—Defendants essentially ask this Court to impose a for-cause bar to recovery of workers' compensation benefits when the employee is unable to find suitable employment elsewhere. Defendants' position is fundamentally incompatible with the well-established principles and purposes of the workers' compensation system, which deliberately eliminates negligence from its calculus in all but certain narrowly defined instances.

¶ 24    The Workers' Compensation Act has been carefully calibrated to balance the needs of compensably injured employees with the potential risks posed to employers.

"The social policy behind the Workers' Compensation Act is twofold. First, the Act provides employees swift and certain compensation for the loss of earning capacity from accident or occupational disease arising in the course of employment. Second, the Act insures limited liability for employers." *Frost v. Salter Path Fire & Rescue*, 361 N.C. 181, 184, 639 S.E.2d 429, 432 (2007) (citation omitted).

¶ 25        As part of this mutually beneficial exchange, our Supreme Court has long recognized that under the Workers' Compensation Act "not even gross negligence is a defense to a compensation claim. Only intoxication or injury intentionally inflicted will defeat a claim." *Hartley v. N.C. Prison Dep't*, 258 N.C. 287, 289, 128 S.E.2d 598, 600 (1962). Since *Hartley* was decided, only the unauthorized use of controlled substances has been added to this limited list of exceptions. *See* N.C. Gen. Stat. § 97-12 (providing that an employee forfeits compensation in the event of "intoxication," "being under the influence of any controlled substance" not properly prescribed, or "willful intention to injure or kill himself or another"). Therefore, an "employee's violation of a safety rule does not *of itself* constitute a bar to recovery of compensation where it may be determined that his injury arose in the course of the employment." *Spratt v. Duke Power Co.*, 65 N.C. App. 457, 466, 310 S.E.2d 38, 44 (1983).

¶ 26        In the instant case, Defendants clarify that they do not argue on appeal that fault has any place in the compensability determination, and they do not dispute that Plaintiff's injury was compensable. Nevertheless, Defendants argue that fault *does*

have a place—or at least, it *should*—in the workers' compensation system, when it comes to determining when an employer may subsequently terminate workers' compensation benefits.

¶ 27 Our Supreme Court considered similar concerns when it first adopted the *Seagraves* test in *McRae*: "We . . . recognize that the current benefit scheme faces the potential for abuse by employees. If injury-related benefits continued without regard to an employee's misconduct, injured employees conceivably could commit misconduct in order to be terminated without suffering the appropriate financial consequences." 358 N.C. at 495, 597 S.E.2d at 700. Yet the *McRae* Court contrasted that concern with its opposite: "[A]ny rule that would allow employers to evade benefit payments simply because the recipient-employee was terminated for misconduct could be open to abuse. Such a rule could give employers an incentive to find circumstances that would constitute misconduct by employees who were previously injured on the job." *Id.* In the end, our Supreme Court concluded that the *Seagraves* test "is an appropriate means to decide cases of this nature" because it "is intended to weigh the actions and interests of employer and employee alike. Ultimately, the *Seagraves* rule aims to provide a means by which the Industrial Commission can determine if the circumstances surrounding a termination warrant preclusion or discontinuation of injury-related benefits." *Id.*

¶ 28 We thus are bound to reject Defendants' argument, and hold that the Full

Commission did not err by concluding that the *Seagraves* test does not apply in the instant case.

¶ 29        Each of Defendants' remaining arguments assumes the applicability of the *Seagraves* test in this case. Accordingly, we need not address those arguments in light of our decision.

### III.    Conclusion

¶ 30        For the foregoing reasons, the Full Commission's Opinion and Award is affirmed.

AFFIRMED.

Judges WOOD and GRIFFIN concur.